Kirkwood, et al., d/b/a Kirkwood
Furniture Store *v.* Hickman.

No. 39478 March 7, 1955 78 So. 2d 351

374

*D. Gary Sutherland,* Hattiesburg, for appellants.

*Karl W. Kepper, F. T. Zachary,* Hattiesburg, for appellee.

ETHRIDGE, J.

This is a suit for damages for wrongful trespass and repossession of a stove purchased by plaintiff under a conditional sale contract. It was instituted in the Circuit Court of Forrest County by appellee, plaintiff below, Mrs. Salome Hickman, against appellants, defendants below, Charles Kirkwood and two others, doing business as Kirkwood Furniture Store in the City of Hattiesburg. The jury returned a verdict for plaintiff for actual and punitive damages in the amount of $380.

The defendants' furniture store is situated in the City of Hattiesburg. Plaintiff lives with her husband in the Dixie Pine Community in Forrest County, several miles out of Hattiesburg. On February 25, 1950, defendants sold to plaintiff a wood stove, pipe and damper for a total purchase price of $132.55. Plaintiff paid $20 cash and was to pay $5 per month until the total amount was paid. The contract of purchase was a short conditional sale agreement, with title to the property remaining in seller until the entire amount was paid. It further provided: ". . . should I fail to make the payments stipulated above, or any one of them, or any part thereof, that act shall authorize the said Kirkwood Furniture Store, or assigns, to repossess said property without process of law, . . ." Defendants installed the stove in the kitchen of plaintiff's home.

At the time of repossession in question, plaintiff had been away for several weeks, visiting her daughter in Texas. Living at the house were her husband, Sam Hickman, her daughter-in-law, Mrs. C. H. Hickman, and the latter's four young children. Mrs. C. H. Hickman was keeping house during plaintiff's absence, and cooking the meals for herself and children, and for her father-in-law, plaintiff's husband. In June 1952 plaintiff became delinquent for several months on her payments, and complained to defendant about a panel on the base of the stove which had become loose. Charles Kirkwood went out to see her about it, repaired the stove, and by agreement, he gave her a $25 discount or credit on the purchase price of the stove on June 16, 1952. After that date, plaintiff made three monthly payments, then skipped the October 1952 payment, and made her last payment in November 1952. At the time of the repossession on April 23, 1953, plaintiff had not made any intervening payments, and the balance due and owing was $23.39.

Plaintiff's version of what occurred when defendants repossessed the stove, which the jury accepted, was given

by her daughter-in-law, Mrs. C. H. Hickman. She was at the house that morning with her four small children. Plaintiff's husband and plaintiff were absent. Charles Kirkwood and another man drove up to the house in a truck. The children were playing in the house. Kirkwood did not ask her if he could come in, ''he just told me he had come to get the stove.'' The witness told Kirkwood to wait until Sam Hickman, her father-in-law, would come in, which would be in about a half hour at 11 o'clock. However, she said that Kirkwood would not wait; that she did not give him permission to take the stove; and that they came in her house and got it against her wishes. Kirkwood told her that they had made several trips to get the stove, did not find anybody home, and had come to get it this time, that ''they were going to get it.'' Mrs. C. H. Hickman said ''there wasn't anything I could do, they were bigger than I was.'' So she made no effort to stop them. She said that she did not authorize Kirkwood to enter the premises, and that they entered against her will. She knew that plaintiff had stopped making payments on the stove. In response to a question whether Kirkwood was courteous to her, the witness replied, ''He didn't get mad.'' She further testified that when Charles Kirkwood and his employee, Frank Leland, removed the stove, they got soot all over the floor in the kitchen, and all in the bedroom — they ''spilled water on the floor out of the stove and just made a mess.'' Mrs. C. H. Hickman said that she gave them a pan to empty the water in from the stove, because they were spilling it all over the floor. The soot went into the bedroom over the linen and on the floor. Kirkwood and Leland made no effort to clean up the mess they made in removing the stove. The witness had been cooking for the children and Sam Hickman, but, of course, was not able to prepare a meal for dinner that day. When Sam Hickman got home around noon, he went out and borrowed an oil stove to cook supper that night. The essence of Mrs. C. H. Hick-

man's testimony is that she did not authorize Kirkwood to remove the stove, that he just told her that they had come to get it and would not wait for her father-in-law to return, that she made no effort to stop them because she had no chance of doing so, and that Kirkwood was determined to remove the stove and did so. ▓▓ ▓ The jury was warranted in finding that the repossession was over her objections and against her wishes.

The plaintiff testified that she was in Texas when the repossession occurred. She apparently returned several days thereafter. She said that when she returned, all of the floor mats were "in bad shape and my linens was soiled by soot"; that the floor mat was worth about $15, and the linen, $10; that she had not given any person authority to enter her home to repossess the stove; and that her daughter-in-law had no authority to turn the stove over to anyone. She admitted that her payments were delinquent. She said that one reason that she had not paid was because Kirkwood had failed to make the condition of the stove satisfactory, but she admitted that she made payments after the adjustment was had in June 1952. Plaintiff's husband, Sam Hickman, testified that he was absent when the stove was repossessed; that it had not given satisfactory service; and that when he returned home soot was all over the floor of the kitchen and in the bedroom, and on the rugs and linens. He said that he had never authorized Kirkwood to enter his home.

Defendants' version of what occurred at the time of the repossession of the stove, although conflicting in some details with plaintiff's evidence, confirms substantially Mrs. Hickman's version of defendants' highhanded actions in taking the stove from this residence. Charles Kirkwood testified that he went to plaintiff's house to see either plaintiff or her husband, and either to collect, or make some arrangement as to payment, or to repossess the stove. The reason he took another man with him was, if necessary, to repossess the heavy stove. He

had sent several collectors out there, but they could not get any payments. Kirkwood said he walked up to the door to talk to Mrs. C. H. Hickman, who was sitting on the screened porch; that he explained to her why he was there and told her that he wanted to get the stove, and if Mr. Hickman wanted to come in and make some arrangement about paying for it, he would return it. He admitted that Mrs. Hickman told him that she wished that he would wait until her father-in-law came, but stated that she said nothing else in the way of objections to his taking the stove, and that she did not object to his going inside of the house. Kirkwood said that Mrs. Hickman moved one or two of the pots and pans and that she assisted him in dipping out the water, that she was "very co-operative, so far as I could see." He had his truck driven around to the back porch, and Leland came in the back door to help him. He said that they were careful not to spill soot, but that when he removed the pipe, some came out; that he asked Mrs. Hickman if she had a piece of paper to put under it, and she said that she did not, that she had to sweep anyway. In response to a question of whether he asked anybody for permission to go into the house, Kirkwood said, "I asked her if she was using the stove," and then inquired, "Is the stove in here?" He never did ask her for permission to go into the house. He said that he inquired whether the stove was "through this door," and that Mrs. Hickman then got up, and he followed her to the back of the house, the kitchen. He admitted that she asked him to wait until Sam Hickman returned.

Frank Leland, Kirkwood's employee who helped him remove the stove, also testified. He stated that he did not hear Mrs. Hickman make any objections. He did not see any soot. Mrs. Hickman did not appear to him to be frightened. He and Kirkwood went to the house with the intention of getting the stove. He did not hear anyone give them authority to go into the house.

Appellants contend that under their conditional sale contract they had the right to repossess the stove whenever and wherever they could peacefully do so, and that this right extends to going into the private residence of the conditional vendee, appellee, and taking the stove under the circumstances detailed above. ■■ ■ In view of the findings of the jury, we must on this appeal interpret the testimony most favorably for the plaintiff. At a time when plaintiff and her husband were absent from their home, Kirkwood went there, walked up on the porch, and told plaintiff's daughter-in-law that he had come to get the stove. She told Kirkwood to wait until Mr. Hickman came home, which would be only a short time. She did not give him permission to take the stove, but nevertheless, against the wishes of Mrs. C. H. Hickman, Kirkwood and his employee went into the house, disconnected and removed it. Mrs. Hickman did not attempt to physically obstruct the removal because, as she said, there was nothing she could do with two men. In removing the stove, Kirkwood and his employee spilled water and soot in both the kitchen and a bedroom. As a result of these actions, Mrs. Hickman was not able to cook the noon meal for her children and father-in-law, and Sam Hickman had to go out and borrow a stove in order that they might cook their supper. ■■ ■ The jury was amply warranted in concluding from this and other testimony that defendants willfully and intentionally invaded the privacy of the plaintiff's home, in her absence; that they refused to wait for a short time until her husband would return; and that they arbitrarily, and over the objections, implicit at least, of Mrs. C. H. Hickman, removed the stove in a careless manner. Certainly these circumstances constitute a willful trespass into the private residence of the plaintiff, and an intentional tort for which she is entitled to obtain damages.

Many cases have made a substantial distinction between a repossession of property by a conditional vendor

where it is situated upon a public street, as in some of the automobile cases, and a repossession of personal property which is situated in a private residence, in the absence of, and without the permission of the conditional vendee. 47 Am. Jur., Sales, Sec. 952, discusses cases dealing with the latter situation. The annotations in 36 A. L. R. 853 (1925) and 146 A. L. R. 1331, 1341-1344 (1943) contain an analysis of the decisions dealing with repossessions by conditional vendors obtained by "entering on premises of vendee."

A leading and well reasoned case on this point, which expresses our views, is Van Wren v. Flynn, 34 La. App. 1158 (1882). Plaintiff had bought from defendant, a furniture dealer, a set of furniture with the understanding that if he did not pay the installments, the seller, Flynn, could repossess it. The payments became delinquent. Plaintiff, and his wife and children were absent when the defendant went to plaintiff's house with a wagon and several men. Plaintiff's mother and sister were there. Defendant and his employee "informed these ladies that he had come to take the furniture, and disregarding their statement that Wren's return was expected and their request that he should wait until his return," defendant removed the furniture. When plaintiff and his family returned that same night, they found the furniture gone. The Court affirmed a judgment for plaintiff, and said:

"No one appreciating the jealous care with which our law guards the sacredness of every man's house and his lawful possession of property against invasion or disturbance, otherwise than by proceedings taken under the sanction and through the agency of the public justice, can question that, unless removed from its general principles by the effect of the agreement set up in defense, the acts which we have detailed constituted a gross outrage upon the rights and feelings of plaintiff, as a citizen and a man, for which courts of justice must either

grant redress or sanction the personal exaction of satisfaction by violence. Thayer v. Littlejohn, 1 Rob. 140.

"The agreement established in this record cannot shield the conduct of defendant. It does not purport, in terms, to confer upon the defendant the right to enter the house of plaintiff, in his absence, without his consent, and without notice, and to carry off its contents. An agreement conferring such extraordinary power would need to be so clearly worded and proven as to leave nothing to implication.

"The grant of the simple right to retake his furniture, on non-payment of the price, cannot be construed to embrace such power.

"It conferred, at most, a legal right upon defendant, which, like other rights, could be enforced only with consent of plaintiff or by legal process; and we doubt, under the evidence here, whether any court would have awarded possession to Flynn, without requiring antecedent tender or payment of that part of the price which had been paid . . .

"We are not disposed to interfere with the allowance by the jury of $750 as damages. The discretion of juries in such matters is not to be interfered with, unless manifestly abused.

"The argument that the slight value of the furniture involved justifies a reduction of damages, has no weight."

In Luthy v. Philip Werlein Co., Inc., 163 La. 752, 112 So. 709 (1927), the Court rendered judgment for plaintiff for $350 damages, for a repossession under somewhat similar facts. Plaintiff bought from defendant a piano. The plaintiff was absent from his home when defendant went there to either collect the balance due or repossess the piano. Plaintiff's daughter told defendant that he would have to see her father, but defendant replied that he had nothing to do with her father, and he repossessed the piano. Defendant prevailed upon plaintiff's daughter to sign an agreement that he could repossess it. The Court held that the daughter had no

authority to authorize repossession. Plaintiff did not consent for defendant to enter his house, and the Court thought that the rule in Van Wren v. Flynn controlled.

In Carter v. Mintz and Goldbloom, 8 So. 2d 709 (La. 1942), plaintiff purchased household furniture from defendants. Upon plaintiff becoming delinquent in payments, and at a time when plaintiff was absent from his home, defendant went to the house to repossess the furniture. Plaintiff's wife was there with two small children, and defendant demanded surrender of the furniture. The wife agreed. Plaintiff had no prior knowledge of defendants' purpose to repossess and did not consent to the repossession. The Court held that the wife could not act for her husband and allow defendants to retake the property. Judgment for $200 was affirmed. In Strahan v. Simmons, 15 So. 2d 164 (La. 1943), plaintiff purchased furniture from defendant. At the time of the repossession plaintiff was absent, and defendant made no effort to get plaintiff's permission. Defendant told plaintiff's mother that he would go to town and get the sheriff, so she consented to the removal. The Court followed Van Wren v. Flynn, and affirmed judgment for $50.

Wilson v. Kuykendall, 112 Miss. 486, 73 So. 344 (1916), was a suit for trespass, brought by Kuykendall. Defendant Wilson had sold a mule to Johnson, who agreed orally to execute a note for the balance of the purchase money, with title to be reserved in Wilson until payment was made. Apparently in the meantime Kuykendall bought the mule from Johnson, or was holding it for Johnson. Johnson had delayed executing the note, and Wilson and two other defendants went upon Kuykendall's premises and took the mule over his protest and without his consent. The value of the mule was about $35. Affirming a judgment for $100, actual and punitive damages, the Court said: "Under the law a party has not the right to invade the premises of another and take from the possession of the other party by force or

against the will of the party in possession any property, even though he may have title thereto. He must in such case resort to court to obtain possession if the party in possession refuses on demand to deliver the property."

 It should be noted that the repossession clause in the instant case did not authorize entry upon plaintiff's premises, and, as was said in Van Wren v. Flynn, an agreement conferring such power must be clearly worded, assuming it to be valid in the absence of active resistance, and the simple grant of a right to retake cannot be construed to embrace it. We confine our holding here to the facts presented. The entry into plaintiff's private residence to retake the furniture, over the implicit objections of plaintiff's daughter-in-law, who was present, and in the absence of plaintiff and without her consent constituted a willful invasion of the privacy of plaintiff's residence and a trespass thereon. The above decisions and annotations amply support the finding of the jury and the judgment. See also Estrich, Installment Sales (1926), Secs. 386-391; 3 Williston, Sales (Rev. Ed. 1948), Sec. 579a; 78 C. J. S., Sales, Sec. 603; Anno. 105 A. L. R. 926 (1936).

Appellants rely upon Commercial Credit Company v. Cain, 190 Miss. 866, 1 So. 2d 776, (1941), and Furches Motor Company v. Anderson, 216 Miss. 40, 61 So: 2d 674, (1952). However, those cases involve repossession of automobiles from public streets. The opinion in the Cain case, describing the right to repossess, said that it must be "openly done at a proper place . . ." The Cain and Anderson cases involved situations entirely different from the instant one, where appellants repossessed the personal property by committing a trespass into the private residence of the conditional vendee, in her absence and without her consent, and over the implicit objections of her daughter-in-law, who was present. Where the repossession occurs in a private residence of the conditional vendee, the retaking must occur with the knowledge of and without objection by the

vendee. Otherwise the conditional seller has an adequate remedy at law to retake the property. ██ ██ The important factors of the sanctity of a private home from invasion by others, and the right of privacy require, we think, a different rule as to the right of repossession from that applied in those cases not involving a private residence.

██ ██ Appellant also complains about an instruction given appellee, and contends that it is wholly inconsistent with one granted appellants. But the latter was not proper under the rule which we are applying here with reference to repossessions in private residences. And the instruction granted appellee was proper. ██ ██ Nor was there any error in refusing the instruction requested by appellants on the burden of proof, since the jury was already adequately instructed on that question.

██ ██ We find no error in the submission to the jury of both actual and punitive damages. In a case of this type actual damages would necessarily and usually be nominal, as here. The intentional and highhanded manner of the trespass warranted the jury in assessing punitive damages. ██ ██ We cannot say that the damages were so excessive as to evince passion and prejudice by the jury. See 52 Am. Jur., Trespass, Secs. 47-61, Wilson v. Kuykendall, 112 Miss. 486, 73 So. 344 (1916).

Affirmed.

*Roberds, P. J., Lee, Arrington* and *Gillespie, JJ.,* concur.