AUSTIN *v.* GENERAL MOTORS ACCEPTANCE CORPORATION

No. 41618 December 12, 1960 125 So. 2d 79

*Johnson & Johnson,* Natchez, for appellant.

*Brandon, Brandon, Hornsby & Handy,* Natchez; *Bob Ray,* Jackson, for appellees.

ETHRIDGE, J.

Appellant, Mrs. Lois Brewer Austin Campbell, as executrix of the estate of her deceased husband, F. X. Austin (hereinafter called plaintiff), brought this suit in tort in the Circuit Court of Adams County for an alleged wrongful repossession of an automobile. After presentation of plaintiff's evidence, the trial court gave a directed verdict for defendants, General Motors Acceptance Corporation (GMAC) and S. B. Lambdin, Jr.

F. X. Austin resided in Adams County, Mississippi. On November 21, 1957 he purchased from a dealer in New Orleans, Louisiana, a 1957 used Pontiac automobile. The contract was executed in Louisiana, and en-

titled "Sale and Chattel Mortgage". The seller conveyed to Austin the car, subject to a mortgage on it and a reserved vendor's lien. Paragraph 6 provided that, if any installment was not paid at maturity, the note should become immediately due and payable, and the vendor or any future holder of the note could cause the property to be seized under a legal process in any court, "or the said vendor or future holder of said note may and is hereby authorized to take immediate possession of said property wherever found without process of law", with the right to sell it at public or private sale. The note, chattel mortgage and vendor's lien were assigned to GMAC.

In April 1958, the purchaser, Austin, became ill, and was delinquent on two monthly installments. Williams, a representative of GMAC, talked with Austin on the telephone about it. On Tuesday, April 22, 1958, Williams attempted to discuss the matter with Austin's wife, the plaintiff-executrix, in the place where she worked. She suggested he come to the Austin home the next day. On Wednesday, April 23, Williams and another representative of GMAC went there around 9 a. m. Mrs. Austin invited them in. They advised her that they had been authorized to repossess the property, and asked her to sign a statement to the effect there was no personal property in the car. She refused, stating she had no authority to do so. Williams wanted to talk to Austin, and she said that he was sick. He was an alcoholic, and the family was waiting on the completion of proceedings to commit him to Whitfield State Hospital for treatment. He was not intoxicated at the time. With the wife's permission, Williams went into the bedroom, and tried to talk to Austin about the repossession, but he was not able to communicate with him. His mother-in-law was there, and she undertook to assist Williams in giving Austin some coffee and helping him sit up in bed, so he could sign the statement, but he was not able to do this.

The GMAC agents were invited into the home by Austin's wife. They talked in an "average tone of voice", and no testimony indicates they were discourteous or oppressive. They were there some 30-45 minutes, and, after concluding that he could not sign the release, they went back to town. After an hour they returned, in the company of a local automobile dealer whom Mrs. Austin knew. The Austin house was on a corner, and the car was in a garage attached to the kitchen, with the key in the ignition. Appellee's representatives advised plaintiff that they had the authority from GMAC to take the car, and she said, "Well, if you have to take the car, it is in the garage." One of GMAC's agents looked to see if there was any personal property in the car. There was not, so he backed it out of the garage. It was repossessed in that manner. Austin died two days later. Credit life insurance paid the debt on the car, and GMAC returned it to plaintiff.

■■■ After plaintiff's counsel finished redirect examination of her third witness, plaintiff rested; but defendant's counsel immediately asked the court to permit defendant to recall plaintiff for a brief, further cross-examination. Plaintiff's objection to this was overruled. Thereafter defendant got her to identify the "Sale and Chattel Mortgage" contract which her husband had executed, and it was introduced in evidence. Appellant contends it was error to permit this further cross-examination after she rested, but that was a matter within the sound discretion of the trial court. The request occurred almost simultaneously with the statement of plaintiff's counsel that she rested her case. We cannot say there was any abuse of discretion in permitting this brief additional cross-examination of plaintiff, which included identification and introduction of the contract.

■■■ Hence the only question is whether, taking the evidence most favorably to plaintiff, the repossession was peaceable and without the use of force, or whether it was obtained by fraud, stealth, the improper use of force,

and trespass. Plaintiff invited appellee's representatives into the house on the first visit, and in effect cooperated with them in attempting to get the buyer in a condition where he could sign the release. When they concluded he was not able to do this, they left. The evidence does not indicate that they attempted to use any force or intimidation on anybody on that occasion.

After obtaining authority from GMAC to repossess the car without this release, they returned in about an hour, and advised plaintiff to that effect. She did not tell them to leave the premises, and did not object to their presence. Plaintiff told them that, if they had to take the car, it was in the garage with the keys in it. One of the men examined it for any other personal property, and drove it off.

 ██ The sale contract, with chattel mortgage and reserved vendor's lien, expressly provided that, in the event of a delinquency, an assignee of the vendor was ''hereby authorized to take immediate possession of said property wherever found without process of law.'' The effect of this provision was to give appellee a revocable license to enter the premises and repossess the car in a peaceable manner without the use of force. This repossession meets those standards.

In Martin v. Cook, 237 Miss. 267, 114 So. 2d 669 (1959), the earlier cases were again considered and the repossession was upheld. That case and Dearman v. Williams, 235 Miss. 360, 109 So. 2d 316 (1959), where a peaceable repossession occurred on the buyer's driveway, at his home and in his absence, are somewhat analogous to the instant case. See also Commercial Credit Company v. Cain, 190 Miss. 866, 1 So. 2d 776 (1941); Furches Motor Co. v. Anderson, 216 Miss. 40, 61 So. 2d 674 (1952). Commercial Credit Co. v. Spence, 185 Miss. 293, 184 So. 439 (1938), involving the use of fraud, stealth and the improper use of force. The exaggerated circumstances of that case are materially different from the present facts, where plaintiff had notice of the intent

to repossess, and it was done peaceably and without fraud.

Kirkwood v. Hickman, 223 Miss. 372, 78 So. 2d 351 (1955), upon which appellant relies, is materially distinguishable. There vendor, over the protest of the buyer's representative, invaded the house to repossess a stove, and in the process damaged the kitchen with soot and dirt. Here there was no invasion of the interior of the buyer's house. His wife did not object to the repossession, or attempt to exclude the seller's agents from the premises. The key was in the car located in an open garage next to the kitchen. We cannot say that this repossession exceeded the authority conferred by the buyer in the contract. It certainly was not done by fraud or through the improper use of force, but was entirely peaceable. Under the circumstances, therefore, the circuit court was correct in granting a directed verdict for appellees.

Affirmed.

*Hall, P.J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.