LUZ MARÍA VÉLEZ CUEBAS ET AL., Plaintiffs and Appellees, *v.* ALEJANDRO CANCEL and MANUEL CANCEL, doing business under the name of CANCEL BROTHERS, and FIDEL BABILONIA, Defendants and Appellants the former.

No. 590.     Decided April 29, 1963.

*Enrique Báez García* for appellants. *E. Alcaraz Casablanca* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The plaintiffs filed an action for damages for wrongful attachment, trespassing on the premises and damages to the personal property against Alejandro and Manuel Cancel, owners of a business in the city of Mayagüez doing business under the name Cancel Brothers, and against Fidel Babilonia, owner of a rental property in said city. The Superior Court,

Mayagüez Part, sustained the complaint as to plaintiffs Iván Rivera and his wife, Mildred Vélez, against Alejandro and Manuel Cancel, ordering them to pay, solidarily, the amount of $2,000 for damages, plus costs and $400 for attorney's fees. No pronouncement was made in regard to coplaintiff, Luz María Vélez Cuebas, or codefendant, Fidel Babilonia. Against this judgment defendants filed the present petition of review.

On November 20, 1958, Cancel Brothers sold to Iván Rivera a dining room set and a china cabinet under a conditional sales contract. The total price of the sale was $195, of which Iván Rivera paid $50 on November 20, 1958 and bound himself to pay the other $145 as follows: $40 on December 20, 1958; $40 on January 20, 1959; $40 on February 20, 1959; and $25 on March 20, 1959.

Plaintiffs delivered the furniture to his home in San Sebastián; then, in moving to Mayagüez, they moved it to their new house in Mayagüez Terrace, and finally, they moved it to a house at 21 Sanjurjo Street of the same city, a property of Fidel Babilonia and leased to Luz María Vélez Cuebas, mother of appellee, Mildred Vélez. In this house the spouses Rivera-Vélez lived from the end of December, 1959 until the middle of January, 1960 when they moved to San Juan with Luz María Vélez Cuebas. The house was, then, leased to Aníbal González, who in turn, subleased a room of the same house for $10 a month to the spouses Rivera where they, in moving to San Juan, left in storage the dining room set and the china cabinet with other furniture property of Luz María Vélez Cuebas. The rest of the house was occupied by Aníbal González.

There was inconsistency as to the proof in the number and amount of the payments made by appellees in addition to the down payment of $50; they alleged that they had made a payment of $40 and another of $20 without specifying dates or producing receipts (T.E. p. 40), while appellants'

books showed that only one additional payment of $40 had been received after action was taken by their lawyer, and this had been on September 21, 1959 (T.E. p. 74). Notwithstanding this contradiction in the evidence it is clear from both contentions that on the date of the complaint the appellees were in default of their monthly installments and thus had failed to comply with their obligation in the conditional sales contract.

Appellants had sent their agents several times to the house on Sanjurjo Street to inquire as to the furniture, while the lessee, Aníbal González, was not present. Upon being informed of these visits González went to Cancel Brothers' business to investigate the purpose thereof. In the furniture store they explained to him as to the default of the spouses Rivera in paying the monthly installments, and said they had knowledge that the furniture was kept in a room of said house. Although in his testimony González denied it, Mr. Alejandro Cancel testified that González had told him that he needed the room where the furniture was stored, and that if they did not carry it away, he (González) would throw it out on the porch. (T.E. p. 62.) Then, in a pickup belonging to Cancel Brothers, two employees of the furniture store went to the house accompanied by González. Using his key, they entered through a door leading to the part of the house occupied by him. Then, they went into the room where the furniture was kept, through an interior door that was opened, although in order to go in they had to push a little a bed that blocked the entrance. (T.E. p. 79.) With the help of González they took possession of the dining room set and china cabinet, removing them through the same door that they had entered. Then, the appellant's employees gave a receipt to González telling him to inform the spouses Rivera that the furniture would be deposited in the warehouse of the furniture store and to come by their office. Next day, having learned what had happened, while in a grocery store

in San Juan through a friend whose name she could not remember, the appellee, Mildred Vélez, returned to Mayagüez. Although González informed her that Cancel Brothers had removed the furniture, appellee did not go to the furniture store, but said she was going to file à complaint, which she did.

Fundamentally, appellants' argument is that the trial court erred in granting the action for damages for illegal entry upon the premises and wrongful attachment, because they entered the place where the furniture was and took possession thereof, according to the provisions of the conditional sales contract, peacefully and orderly, without breach of peace or use of violence, and with the consent of the person in whose possession they were deposited.

Section five of the conditional sales contract in the last sentence states thus:

"(5) . . . The prompt performance of his obligation on the part of the vendee in compliance with the contract is an essential part of the same *and if the vendee should fail to comply with the terms of this contract or the vendor should deem that the goods are in danger of damage or forfeiture, the vendor or his assignee, can take immediate possession of the goods without any notice,* including accessories and equipment of the same." (Italics ours.)

The case law and legislation of the United States (from which our statutes on conditional sales are derived) recognize in the conditional vendor the right to repossess the property sold without resort to legal process either as an implicit right or by virtue of an express provision in the contract. *Cf.* art. 9—503 Uniform Commercial Code, Uniform Laws Annotated; § 16 Uniform Conditional Sales Act, 2 U.L.A. 27. See also, 2A Uniform Laws Annotated 138. Some statutes on conditional sales and generally the contracts of said sales contain provisions granting this right to the conditional vendor. This right is limited upon imposing on the vendor acting so, the duty of doing it peacefully, without

the use of violence or force, and without provoking or initiating a breach of peace. Otherwise, he incurs in responsibility for tortious acts. *Besner* v. *Smith*, 178 A.2d 924 (D.C. 1962); *Shelby* v. *Hudiburg Chevrolet Inc.*, 361 P.2d 275 (Okla. 1961); *Lepley* v. *State*, 103 P.2d 568 (Okla. 1940). See notes in 53 Mich. L. Rev. 1016 (1955); 30 N.C.L. Rev. 149 (1952) and 146 A.L.R. 1331 (1943). Mindful of the importance of the institutions involved in problems of this nature—private property and the liberty against illegal entry upon the premises—the courts have been very strict in applying this rule, holding the vendor who attempts to repossess, responsible for the slightest show of force or violence. *Renaire Corporation* v. *Vaughn*, 142 A.2d 148 (D.C. 1958). They hold the same view if the conditional vendor has used constructive force or committed fraud. *Cf. Martin* v. *Cook*, 114 So.2d 669 (Miss. 1959); *McWaters* v. *Gaidner*, 69 So.2d 724 (Ala. 1954). In absence of express consent, the courts do not permit the vendor's entry in the residence of the vendee to take repossession, *Besner* v. *Smith, supra, Kirkwood* v. *Hickman*, 78 So.2d 351 (Miss. 1955); *Girard* v. *Anderson*, 257 N.W. 400 (Iowa 1934), and require that at the show of the least resistance on the part of the vendee, the vendor should abandon his purpose of repossession on his own and without resort to legal proceedings; and the vendor is not permitted either, in not finding the vendee in his residence, to break in the entrance. *Renaire Corporation* v. *Vaughn, supra.* In a situation like this the repossession should be taken with the knowledge and consent of the vendee. *Kirkwood* v. *Hickman, supra; Cecil Baber Electric Co.* v. *Greer*, 83 P.2d 598 (Okla. 1938).

On the other hand, it should be acknowledged that the purpose of such a rule that prohibits repossession by force is to prevent the breach of peace and invasion on the peace of the home, but it has never been nor can ever be to encourage

the vendee to breach the conditions. *Cf.* 53 Mich. L. Rev. 1018 (1955).

In the case at bar, it was established that the conditional vendees were in default of their payments and they had left the furniture in a rented room. It appears from the facts that the repossession of the aforesaid furniture by the appellants was taken orderly and peacefully and with the help and consent of the lessee of the house, but without appellees' consent or knowledge of the appellees as owners and holders of the furniture that were in a room of said house, subleased to appellees. It was not proved that damage was caused to said furniture during the repossession, and also, the appellants gave the corresponding receipt to González with the instructions to tell appellees where the furniture was deposited and to come to their office in the furniture store.

■ Section 6 of the Conditional Sales Act (10 L.P.R.A. § 36) provides that the conditional vendor may retake the articles sold on breach of the condition of sale and in such case they shall be retained for a period of thirty days, and during such period the vendee, or his successor in interest, may comply with the terms of such contract, and thereupon receive such property and, if such terms are not complied with within such period, the vendor may cause such articles to be sold at public auction. But said section provides that for the vendor to recover the movable goods, he should resort to the legal proceeding established by said law. In *Mejías* v. *López*, 51 P.R.R. 20 (1937) where it was alleged that a conditional vendor ignoring the appropriate legal proceeding repossessed the goods sold using violence and trespassing the house of the vendee, he carried away the goods against the will and without the consent of the vendee for which damages were claimed, we decided "If the plaintiff failed to comply with the terms of the contract between her and the defendants, *the latter had an adequate remedy under the Conditional*

*Sales Act itself. Section 40¹ thereof affords the [conditional] vendor the legal means for retaking the thing sold. But plaintiff's default was no justification for the vendor to take the law into his own hands*, to enter forcibly the plaintiff's home which it was the defendant's duty to respect, as required by law, or to seize the thing sold in the forcible, ostensible, and inconsiderate manner alleged in the complaint, thereby causing the plaintiff the specified damages," and thus we held that the complaint in this case alleged a cause of action and we dismissed the demurrer in the case. (Italics ours.)

■ In view of what has been said we have to decide whether or not, notwithstanding the clear language of the statute in question and the provisions of §§ 4, 1069, and 1207 of the Civil Code (31 L.P.R.A. §§ 4, 3044, and 3372) the parties could agree, in a conditional sales contract, on the repossession without resort to legal proceeding contained in the aforesaid fifth clause of the contract. *Cabrera* v. *Doval*, 76 P.R.R. 728 (1954), treated the written release or exemption from "all claim or demand of any kind whatever . . . as a result of my blood donation, . . . and from any consequence arising directly or indirectly therefrom." We said then that the aforesaid sections of the Civil Code consecrate the freedom to contract bearing in mind, first of all, the will of the contracting parties, which must always prevail provided it is not in contravention of law, good habits, morals, or public order. *Cf.* II-1 Puig Brutau, *Fundamentos de Derecho Civil* 52–55; I Scaevola, *Código Civil* 249 (6th ed.). However, we did not decide in this case whether or not an agreement not to demand or claim is contrary to the public order because from the interpretation of the clause we decided that the claim in said case was not included in said clause.

---

¹ Apparently an error was committed in the drafting or printing of this case upon referring to the section which establishes the proceeding for repossession as section 40. In fact the court meant § 6 of Act No. 61 of April 13, 1916, amended by Act No. 40 of June 27, 1925 (10 L.P.R.A. § 36).

In the light of the clear and specific provisions of the statute which is the source of law relating to conditional sales and of our ruling in *Mejías, supra*, we are of the opinion that a clause in conditional sales contracts that permits the vendor to repossess the goods sold by any means other than those provided by said statute is untenable and lacks validity, as being contrary to the laws of Puerto Rico. Notwithstanding the antecedents to the contrary which we have cited from other jurisdictions with similar legislation, we believe that the statute in question, in providing a rapid and effective means that permits the conditional vendor to enforce his rights, makes it improper to resort to the hateful practice of taking the law in their own hands, even if it can be done without the use of violence or force and without breach of peace, as it was shown happened in the case at bar.

■ Appellees did not prove conclusively having suffered special damages (T.E. pp. 18, 57 and 78), nor did the trial court make any pronouncement in relation to the same. The present facts in this case show, in our judgment, that the amount for moral damages fixed by said court in $2,000 is excessive, and thus should be reduced to the amount of $200. Considering that appellants have not acted rashly, the granting of attorney's fees does not lie either.

The judgment is modified in the terms of this opinion, and as modified it is affirmed.