LUZ MARÍA VÉLEZ CUEBAS ET AL., demandantes y recurridos, *v.* ALEJANDRO CANCEL y MANUEL CANCEL, haciendo negocios bajo el nombre de CANCEL HERMANOS, y FIDEL BABILONIA, demandados y recurrentes los primeros.

*Número:* 590      *Resuelto:* 29 de abril de 1963

*Enrique Báez García,* abogado de los recurrentes; *E. Alcaraz Casablanca,* abogado de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Los demandantes incoaron una acción de daños y perjuicios por embargo ilegal, penetración ilegal en la propiedad, y daños a la propiedad mueble contra Alejandro y Manuel Cancel, dueños de un negocio en la ciudad de Mayagüez que opera bajo el nombre de Cancel Hermanos y contra Fidel Babilonia, propietario de una casa de alquiler en dicha ciudad. El Tribunal Superior de Mayagüez declaró con lugar la demanda en cuanto a los demandantes Iván Rivera y su esposa Mildred Vélez contra Alejandro y Manuel Cancel, condenando a éstos a pagar solidariamente la suma de $2,000 por concepto de daños y perjuicios, más las costas y $400 para honorarios de abogado. No se hizo pronunciamiento alguno en cuanto a la co-demandante Luz María Vélez Cuebas ni en cuanto al co-demandado Fidel Babilonia. Contra esta sentencia los demandados entablaron el presente recurso de revisión.

En 20 de noviembre de 1958, Cancel Hermanos vendió

a Iván Rivera un juego de comedor y un chinero bajo contrato de venta condicional. El precio total de venta fue de $195, de cuya cantidad Iván Rivera entregó $50 el 20 de noviembre de 1958 y se comprometió a pagar los restantes $145 en la forma siguiente: $40 en 20 de diciembre de 1958, $40 en 20 de enero de 1959, $40 en 20 de febrero de 1959 y $25 en 20 de marzo de 1959.

Los demandantes llevaron los muebles a su hogar en San Sebastián; luego, al mudarse a Mayagüez, los trasladaron a su nueva casa en Mayagüez Terrace y finalmente los llevaron a una casa en la calle Sanjurjo Núm. 21 de la misma ciudad propiedad de Fidel Babilonia y arrendada a Luz María Vélez Cuebas, madre de la recurrida Mildred Vélez. En esta casa vivieron los esposos Rivera-Vélez desde fines de diciembre de 1959 hasta mediados de enero de 1960 cuando se trasladaron a San Juan junto con Luz María Vélez Cuebas. La casa fue arrendada entonces a Aníbal González y éste a su vez le subarrendó por $10 mensuales una habitación de la misma a los esposos Rivera donde éstos, al trasladarse a San Juan, dejaron guardados el juego de comedor y el chinero junto con otros muebles propiedad de la señora Luz María Vélez Cuebas. El resto de la casa era habitada por Aníbal González.

Hubo inconsistencia en cuanto a la prueba sobre el número y la cantidad de los pagos hechos por los recurridos en adición al pronto pago de $50, alegando éstos que hicieron un pago de $40 y otro de $20 sin especificar las fechas ni mostrar los recibos (T.E. pág. 40), mientras que los libros de los recurrentes demostraron que sólo se había recibido un plazo adicional de $40 luego. de ciertas gestiones de su abogado y que esto había sido en 21 de septiembre de 1959 (T.E. pág. 74). No obstante esta disparidad en la prueba resulta claro de ambas contenciones que para la fecha de la demanda los recurridos estaban atrasados en los pagos habiendo in-

cumplido en esta forma su obligación bajo el contrato de venta condicional.

Los recurrentes habían enviado varias veces cobradores a la casa de la calle Sanjurjo a inquirir sobre los muebles mientras el arrendatario Aníbal González no se encontraba presente. Al ser informado de estas visitas González se dirigió al negocio de Cancel Hermanos para averiguar el propósito de las mismas. En la mueblería le explicaron la situación de los esposos Rivera en cuanto a los pagos atrasados y le indicaron que ellos tenían conocimiento de que los muebles se encontraban en una habitación de la referida casa. Aunque en su testimonio González lo negó, el señor Alejandro Cancel testificó que González le había dicho que él necesitaba la habitación donde estaban los muebles y que si no se los llevaban, él (González) los tiraría a la galería (T.E. pág. 62). Fueron a la casa entonces en una guagua de Cancel Hermanos dos empleados de la mueblería acompañados de González. Entraron con la llave de éste por una puerta que da a la parte de la casa habitada por él. Luego se dirigieron a la habitación donde estaban los muebles por una puerta interior que estaba abierta aunque para entrar tuvieron que empujar un poquito una cama que les impedía la entrada (T.E. pág. 79). Con la ayuda de González tomaron posesión del juego de comedor y del chinero, sacándolos por la misma puerta que entraron. Luego, los empleados de la recurrente le otorgaron un recibo a González indicándole que le informara a los esposos Rivera que los muebles estarían depositados en el almacén de la mueblería y que pasaran por sus oficinas. Al siguiente día habiéndose enterado de lo acontecido en un colmado en San Juan por medio de una amiga cuyo nombre no pudo recordar, la recurrida Mildred Vélez regresó a Mayagüez. A pesar de que González le informó que Cancel Hermanos se había llevado los muebles, la recurrida no fue a la mueblería sino que dijo que radicaría una demanda, lo que hizo.

Fundamentalmente, la contención de los recurrentes es que el tribunal de instancia erró al declarar con lugar la demanda de daños y perjuicios por invasión ilegal de la propiedad privada y embargo ilegal debido a que ellos penetraron en el lugar donde se hallaban los muebles y se apoderaron de los mismos conforme a los términos del contrato de venta condicional, en una forma pacífica y ordenada, sin alterar la paz ni utilizar la violencia y con el consentimiento de la persona en cuyo poder estaban depositados.

La cláusula Quinta del contrato de venta condicional en su última oración dice así:

"(5) . . . El cumplimiento puntual por parte del comprador de sus obligaciones de acuerdo con este contrato es parte esencial del mismo *y si el comprador dejase de cumplir puntualmente con las disposiciones de este contrato o si el vendedor creyere que los bienes están en peligro de dañarse o de ser confiscados, el vendedor o su cesionario, podrá tomar posesión inmediata de los bienes sin que medie notificación alguna,* incluyendo los accesorios y equipo de los mismos." (Énfasis nuestro.)

La doctrina jurisprudencial y la legislación de Estados Unidos (de donde procede nuestra ley de ventas condicionales) reconocen la alternativa que tiene el vendedor condicional de reposeer los bienes vendidos sin la ayuda de los tribunales bien sea como un derecho implícito o por virtud de una disposición expresa en el contrato. Cf. Art. 9—503 *Uniform Commercial Code,* Uniform Laws Annotated; sec. 16 *Uniform Conditional Sales Act,* 2 U.L.A. pág. 27. Véase, además, 2A *Uniform Laws Annotated,* pág. 138. Algunos estatutos de ventas condicionales y generalmente los contratos de dichas ventas contienen disposiciones concediéndole este derecho al vendedor condicional. Queda limitado este derecho al imponerle al vendedor que así procede la obligación de que lo haga pacíficamente, sin emplear violencia ni fuerza y sin provocar o iniciar una alteración a la paz. De otra forma incurre en responsabilidad por actos torticeros. *Besner*

v. *Smith,* 178 A.2d 924 (D.C. 1962); *Shelby* v. *Hudiburg Chevrolet Inc.,* 361 P.2d 275 (Okl. 1961); *Lepley* v. *State,* 103 P.2d 568 (Okl. 1940). Véanse las notas en 53 Mich. L. Rev. 1016 (1955); 30 N.C.L. Rev. 149 (1952) y 146 A.L.R. 1331 (1943). Atentos a la importancia de las instituciones involucradas en problemas de esta naturaleza—la propiedad privada y la libertad contra invasiones ilegales a la propiedad —los tribunales han sido muy estrictos en la aplicación de esta regla responsabilizando al vendedor que intenta reposeer por su más mínima demostración de fuerza o violencia. *Renaire Corporation* v. *Vaughn,* 142 A.2d 148 (D.C. 1958). En igual sentido se pronuncian si lo que ha habido de parte del vendedor condicional es fuerza constructiva o fraude. Cf. *Martin* v. *Cook,* 114 So.2d 669 (Miss. 1959); *McWaters* v. *Gaidner,* 69 So.2d 724 (Ala. 1954). En ausencia de acuerdo expreso los tribunales no permiten la entrada del vendedor en la residencia del comprador para llevar a cabo la incautación, *Besner* v. *Smith,* supra, *Kirkwood* v. *Hickman,* 78 So.2d 351 (Miss. 1955); *Girard* v. *Anderson,* 257 N.W. 400 (Iowa 1934), y exigen que ante la presentación de la más leve resistencia de parte del comprador, debe el vendedor abandonar su propósito de reposeer por cuenta propia y sin recurrir a los tribunales; y tampoco le es permitido al vendedor, al no encontrar al comprador en su residencia, forzar la entrada a ésta. *Renaire Corporation* v. *Vaughn,* supra. En una situación como esta última la reposesión debe hacerse con el conocimiento y consentimiento del comprador. *Kirkwood* v. *Hickman,* supra; *Cecil Baber Electric Co.* v. *Greer,* 83 P.2d 598 (Okl. 1938).

Por otra parte, conviene reconocer que el propósito de una regla como ésta que proscribe la reposesión por la fuerza es evitar alteraciones a la paz pública e invasiones a la tranquilidad del hogar, pero nunca ha sido ni puede ser el ayudar al comprador a quebrantar sus obligaciones. Cf. 53 Mich. L. Rev. 1018 (1955).

En el caso de autos, quedó establecido que los compradores condicionales estaban considerablemente atrasados en sus pagos y que habían dejado los muebles en una habitación alquilada. Según se desprende de los hechos, la toma de posesión de los referidos muebles por los recurrentes fue en todo momento ordenada, pacífica y con la ayuda y el consentimiento del arrendatario de la vivienda, pero sin el consentimiento ni conocimiento de los recurridos como los dueños y poseedores de los muebles que estaban situados en una habitación de dicha vivienda subarrendada a los recurridos. No quedó probado que se causaron daños a dichos muebles durante la reposesión y, además, los recurrentes le otorgaron el correspondiente recibo a González con instrucciones de que le indicara a los recurridos dónde se encontraban depositados los muebles y que pasaran por las oficinas de la mueblería.

El Art. 6 de la Ley de Ventas Condicionales (10 L.P.R.A. sec. 36) provee que el vendedor condicional puede recuperar los bienes vendidos al faltarse al cumplimiento de las condiciones de venta y en dicho caso deberá retenerlos por un período de 30 días dentro del cual el comprador o su cesionario podrá dar cumplimiento a los términos del contrato y subsiguientemente recibir los bienes y, de no cumplir el comprador dentro de dicho término, el vendedor podrá vender los bienes en pública subasta. Pero dicho artículo dispone que para el vendedor recuperar los bienes, debe seguir el procedimiento judicial, provisto por dicho estatuto. En *Mejías* v. *López*, 51 D.P.R. 21 (1937), en que se alegó que un vendedor condicional prescindiendo del procedimiento judicial indicado recuperó los bienes vendidos por la violencia, penetrando en la morada del comprador y sacando los bienes de allí contra la voluntad y sin el consentimiento del comprador por lo que se reclamaron daños y perjuicios resolvimos que "Si la demandante no cumplió el contrato que celebrara con la demandada, *ésta tenía en la propia*

*ley sobre ventas condicionales un remedio adecuado. La sección 40 ([1]) de esa ley da al vendedor condicional el medio legal para recuperar la cosa vendida. Pero la falta de cumplimiento no la autorizaba a tomarse la justicia por su mano* a violar el hogar de la demandante que estaba obligada a respetar de acuerdo con la ley y a apoderarse de la cosa vendida en la forma violenta, ostensible y desconsiderada que se alega en la demanda, causando a la demandante con su actuación culpable el daño que se especifica" y en tal virtud sostuvimos que la demanda en este caso aducía una causa de acción y por lo tanto declaramos sin lugar la excepción previa en el caso. (Énfasis nuestro.)

En vista de lo expuesto réstanos resolver si, no obstante la letra clara del estatuto en cuestión y las disposiciones de los Arts. 4, 1069 y 1207 del Código Civil (31 L.P.R.A. secs. 4, 3044 y 3372) podían las partes convenir en un contrato de venta condicional la reposesión extrajudicial contenida en la referida cláusula Quinta del contrato. En *Cabrera v. Doval*, 76 D.P.R. 777 (1954), se trataba de una exoneración escrita de "toda demanda o exigencia de cualquier índole como resultado de haber donado mi sangre . . . y a cualquier consecuencia que de allí directa o indirectamente resultare." Dijimos entonces que los referidos artículos del Código Civil consagran la libertad de contratación, atendiendo en primer término a la voluntad de los contratantes la que deberá prevalecer siempre que no sea contraria a la propia ley, a las buenas costumbres, a la moral, ni al orden público. Cf. Puig Brutau, *Fundamentos de Derecho Civil*, tomo II, vol. 1, págs. 52–55; Scaevola, *Código Civil,* tomo I, ed. 6a. pág. 249. Sin embargo, no resolvimos en este caso si un convenio para no demandar es o no es contrario al orden público ya que de

---

([1]) Aparentemente se cometió un error en la redacción o en la impresión de este caso al referirse a la sección que establece el procedimiento de reposesión como la sección 40 de la ley. En realidad el tribunal se refería al Art. 6 de la Ley Núm. 61 de 13 de abril de 1916, enmendada por la Ley Núm. 40 de 27 de junio de 1925 (10 L.P.R.A. sec. 36).

la interpretación de la cláusula de exoneración concluimos que la reclamación en dicho caso no estaba incluida en dicha cláusula.

A la luz de las disposiciones claras y específicas del estatuto que es la fuente del derecho relativo a ventas condicionales y de lo que dijimos en *Mejías*, supra, somos de opinión que una cláusula en contratos sobre ventas condicionales que permita al vendedor recuperar los bienes vendidos por medio alguno que no sea el prescrito por dicho estatuto es improcedente y carece de validez por ser contraria a la ley en Puerto Rico. No obstante los precedentes en contrario que hemos citado de otras jurisdicciones con legislación similar, creemos que el estatuto en cuestión al proveer un medio rápido y efectivo que permite al vendedor condicional hacer valer sus derechos, hace improcedente el recurrir a la odiosa práctica de tomarse la justicia en sus manos aunque se pueda hacer sin emplear violencia ni fuerza y sin provocar o iniciar una alteración de la paz, como se demostró que ocurrió en el caso ante nos.

■ Los recurridos no probaron cumplidamente haber sufrido daños especiales (T.E. págs. 18, 57 y 78), ni el tribunal de instancia hizo pronunciamiento alguno con respecto a los mismos. Las circunstancias presentes en este caso demuestran, a nuestro juicio, que la cuantía de los daños morales fijada por dicho tribunal en $2,000 es excesiva y, por lo tanto, debe reducirse a la suma de $200. Por considerar que los recurrentes no han actuado temerariamente, tampoco procede la concesión de honorarios de abogado.

*Se modifica la sentencia en los términos indicados en esta opinión y así modificada se confirma.*