I agree with the majority's decision to reverse the circuit court's entry of a j.n.o.v. in favor of Bandy and grant a new trial, but disagree with its relegation of the issue of punitive damages to a mere footnote on the last page of the opinion. In light of our decision in Ivy v. General Motors AcceptanceCorp., 612 So.2d 1108, 1111-12 (Miss. 1992), the $83,920.00 judgment against Evans and Bandy should be reinstated. The majority properly affirmed the jury's finding that Evans committed a tortious breach of the peace when he continued his attempt to repossess Hester's van from his property over his protestations. However, whether Evans is found to be an agent, employee or independent contractor, Bandy, too, is liable for Hester's injuries. Moreover, because of the particularly egregious circumstances of the repossession, the circuit judge erred in refusing *Page 844 
to instruct the jury on the issue of punitive damages.
I agree with the majority's finding that the circuit court erred in sustaining Bandy's independent contractor defense. However, in determining whether Bandy may be found liable, it matters not whether Evans was an agent, employee or an independent contractor. In W.J. Runyon Son, Inc. v. Davis,605 So.2d 38 (Miss. 1992), we effectively eviscerated the distinction that had been drawn between the labels of "employee" and "independent contractor." Finding that Runyon, a road contractor, was liable for the negligence of Whigham, a self-employed independent hauler hired to transport asphalt from Runyon's plant to a construction site, we stated:
 Shorn of its mythology and elaborate factor analyses, the question may be simply put: whether the project owner maintains a significant de jure right or de facto power of control over the performance of aspects of the work from which the injury has arisen or to which it is reasonably incident. Magee v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss. 1989). Where the accident arises out of or in connection with work activities the master had a de jure right or de facto power to control, or as a reasonable incident thereto, the master should be vicariously liable for the servant's defaults. This is no precise formula, nor is it susceptible of mechanical application. Over a range of cases we see we have not shorn it of its shades of gray. Still, it is the better framing of the question, and an affirmative answer yields vicarious liability. A negative answer and the plaintiff must look to the tortfeasor alone.
605 So.2d at 46. There is no question that Bandy had both a legitimate right and the actual power to require Evans, or any other repossessor working for him, to perform his task so as not to cause a breach of the peace as set forth in U.C.C. § 9-503. Accordingly, despite the label we attach to Evans, Runyon
controls the question of Bandy's liability for Evans' torts. Despite the majority's exhaustive discussion of employee and independent contractor status, it attempts to sidestep Runyon.
Nevertheless, it reaffirms the basic premise of Runyon when it states:
 We likewise hold as a sound and salutary principle that when one employs another to perform a task in which a serious danger to person or property, a crime, or some tort can reasonably be anticipated in its performance, it is no defense to say the act causing the harm was committed by an independent contractor.
Op. at 843. If the majority will not expressly reject or accept our holding in Runyon, the case, at the very least, must be remanded for consideration of the issue of agency.
On appeal, the Hesters contend that the circuit court erred in refusing to grant their requested jury instruction on the issue of punitive damages. In Ivy, we reaffirmed that punitive damages may be appropriate in self-help repossession cases where the repossession was accompanied by "`malice, fraud, oppression or wilful wrong evincing a disregard of the rights' of the debtor." 612 So.2d at 1118; Bradley v. Associates DiscountCorp., 230 Miss. 131, 138, 92 So.2d 468, 471-2 (1957). See generally, Jonathan M. Purver, Annotation, Punitive Damages forWrongful Seizure of Chattel by One Claiming Security Interest,
35 A.L.R.3d 1016 (1971 and Supp. 1993). We explained that:
 a creditor must do more than cause a mere breach of peace before he or she can be held liable for punitive damages. Restated, a breach of peace may be deemed tortious — for which the creditor will be held liable for actual and consequential damages — but the tortiousness of the conduct must rise to a heightened level before punitive damages may be imposed.
Ivy, 612 So.2d at 1118 (emphasis in original). As we stated inKirkwood v. Hickman, 223 Miss. 372, 78 So.2d 351 (1955), even when no violence is involved in the repossession, punitive damages may be warranted when a trespass to retrieve the property is conducted in an "intentional and highhanded manner." 223 Miss. at 385, 78 So.2d 351.
Evans' actions in repossessing the Hesters' van clearly were both "intentional" and "highhanded." He admitted that he wanted to see if his assistant that night, Bill Christner, "had what it takes" to succeed in the *Page 845 
repossession business. The two men drove up to the Hester's property at 3:00 a.m. with the lights of the wrecker turned out, checked the vehicle identification number of the van with a pen light, and moved the Hesters' son's Camaro with a "quick snatch harness." They then attached the harness to the van and began to tow it down the driveway. Hester came to the door with his shotgun and shouted at them to stop. While Hester's wife and four children watched, Evans and his assistant kept on towing, with Hester in full pursuit. As I stated in my dissent to Ivy, where the majority affirmed the overturning of a jury award for punitive damages, "[i]f the conduct of the defendants does not qualify as `reckless disregard for the rights of the chattel holder,' then I am at a loss to imagine what might fit the description." 612 So.2d at 1120.
The facts recited herein are far more outrageous than those inIvy, where the agent waited until after sunrise to repossess the debtor's van and was "very nice" about allowing Ivy to retrieve his belongings from the vehicle. Yet, the question of punitive damages was put to the jury in that case. It is well-established that a party is entitled to have jury instructions given regarding all material issues presented in the pleadings or the evidence. Glorioso v. Young Men's ChristianAssociation of Jackson, 556 So.2d 293, 295 (Miss. 1989);Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss. 1984). The Hesters sought punitive damages in their complaint and the evidence adduced at trial supports their claim. Accordingly, it should be found that the trial judge erred in refusing to put the issue to the jury.
In picking and choosing which jury instructions to discuss, the majority belabors its point that the circuit court erred in granting Instruction C-20, which Bandy asserted in his motion for j.n.o.v. The majority finds that the circuit court erred in giving the instruction because Bandy had no "notice" that promissory estoppel was an issue in the case. It is of little consequence that Hester's attorney did not submit an instruction twenty-four hours before trial as required by Rule 2.10 of the Uniform Circuit Court Rules. Rule 3.09 places no such time constraints on the judge's issuance of instructions, and the defendants' objections were noted in the record as required by the rule. The majority likewise finds that the pleadings provided no notice that Pam Hester had relied on Karen Bandy's representations. Though the complaint may not be drafted as artfully as the majority might desire, Paragraph 6 of the Complaint states as follows:
 That on or about Wednesday, September 14, 1988, the Plaintiff, Pam Hester, talked with Karen Bandy, an agent of the Defendant, and advised that she was placing her payment in the mail for the month of August, which payment was mailed to the Defendant on September 15, 1988.
Bandy responded, averring:
 These answering defendants admit that on or about Wednesday, September 14, 1988, the plaintiff, Pam Hester, talked with Karen Bandy, an agent of the defendant and advised she was placing her payment in the mail for the month of August. However, these answering defendant[s] deny each and every other material allegation or conclusion of law contained in Paragraph 6 of plaintiff's Complaint.
Surely this provided Bandy with notice that the September 14, 1988, conversation between the two women was at issue, and further, that some connection existed between the conversation and Pam's representation that a check was forthcoming by mail. As promised, she mailed the check on September 15. This was consistent with Hester's practice over the prior eleven months of mailing checks or money orders. Since this is a notice pleading state, Bandy was not required to recount every detail of the conversation. If the majority believes otherwise, it is time we ripped out the form complaints in Appendix A to the Mississippi Rules of Civil Procedure and threw them all away!
Accordingly, while I concur with the majority's finding that Bandy, too, is liable for Hester's damages, I disagree with its rationale for so holding. I further disagree with the majority's emphasis on the notice issue.
BANKS, J., joins this opinion in part. *Page 846