COMPTON, *Respondent,*
*v.*
CREAGER TRUCKING CO., INC. et al,
*Appellants.*
(TC 417 637, SC 25183)
579 P2d 1297

George O. Tamblyn, Portland, argued the cause for appellants. With him on the briefs were Margaret H. Leek Leiberan and Sherman B. Kellar, Portland.

James E. Griffin, Portland, argued the cause for respondent. With him on the brief was Williams, Stark, Hiefield, Norville & Griffin, P.C., Portland.

Before Denecke, Chief Justice, and Bryson and Linde, Justices, and Thornton, Justice Pro Tempore.

THORNTON, Justice Pro Tempore.

**THORNTON, J.,** Pro Tempore.

This case involves an action for conversion of a 1970 Trailmobile trailer and a 1966 Freightliner tractor. A jury awarded plaintiff general, special and punitive damages totaling $9,050 for the trailer and $4,000 for the tractor. Defendant[1] appeals, making four assignments of error: The trial court erred (1) in finding as a matter of law for the plaintiff on the issue of conversion of the tractor and so instructing the jury; (2) overruling defendant's motion for a directed verdict in its favor on the issue of conversion of the tractor; (3) refusing to remove the issue of punitive damages from the jury; and (4) submitting a verdict form that did not provide for an award of nominal damages.

Due to the types of issues involved, a rather detailed recounting of the facts is necessary. On December 22, 1972, Harold Foster and his wife borrowed $10,000 from the United States National Bank of Oregon (Bank) and secured the debt by a chattel mortgage on a 1969 Brown flatbed trailer and the tractor involved in this action. Defendant cosigned the note and security agreement, and the certificate of title on the vehicle was changed to show the Bank as the legal owner and defendant as registered owner.

Foster's payment record on the loan was not consistent, and, in fact, defendant had made two of the loan payments for Foster. By November 1974 the loan was three payments past due. On November 1, 1974, Foster leased the truck to plaintiff in the hope that revenues from the lease would be enough to cover the continuing obligation on the loan. Sometime in November 1974, defendant contacted the plaintiff and told him that the payments on the loan were overdue and that if they were not brought up to date defendant would

---

[1] When referring to defendant we are referring to Creager Trucking Co. Defendant Roger Miles was an employe of Creager Trucking Co. and acted on behalf of the company. For purposes of this appeal and to make this opinion clearer, we do not refer to Miles since everything said about Creager Trucking Co. applies equally to him.

have to pay off the loan and repossess the tractor. Defendant did so because he had been receiving substantial pressure from the Bank since October 1974 to get the payments current.

Plaintiff indicated to defendant that he would speak to Foster and the Bank and attempt to work things out. The Bank's commercial loan officer testified that plaintiff came to see him in mid-November and agreed to hold revenues back from the truck's trip receipts to make the monthly loan payments. The first such payment was due on November 22, 1974. Sometime near that date, plaintiff wrote a check to the Bank for the past due payments. The account upon which the check was written was closed, however, and the check was returned to the Bank unpaid. The check was resubmitted to plaintiff's bank but was returned unpaid on December 16, 1974. The Bank notified defendant that it could wait no longer and wanted full payment on the loan. On December 31, 1974, after defendant had paid the remaining loan balance, the security interest held by the Bank was assigned to defendant. No notice of the assignment was sent to plaintiff.

On the first or second day of January 1975, one of defendant's employes flew to Louisiana where the truck had been located and drove it back to Portland.[2] Attached to the truck and returned to Portland with it was a 1970 Trailmobile trailer. Defendant was aware at the time of repossession that this was not the trailer covered by the security agreement, but allegedly on the advice of defendant's attorney the employe took the trailer as well as the tractor.

According to defendant's president, James Creager, he tried on several occasions to locate plaintiff to arrange for the return of plaintiff's trailer during January 1975. Plaintiff, who became aware of defendant's actions around January 6, 1975, did not contact

---

[2]Neither party raised any issue concerning the possible application of Louisiana law to the transaction.

defendant for the return of the trailer. In February 1975 a driver formerly employed by plaintiff appeared at defendant's office and presented papers which he claimed entitled him to the plaintiff's trailer. The papers he presented to defendant's employer were a demand letter claiming wages due from plaintiff and an affidavit of the driver specifying the hours worked and the pay due. The driver also indicated after telephoning his attorney from defendant's office that he had a judgment against plaintiff. Based upon these representations, defendant permitted the driver to take plaintiff's trailer.

## I

■ Defendant's first two assignments of error will be considered together because the question of whether as a matter of law defendant's conduct constituted a conversion of the tractor is dispositive of both assignments of error.[3] The trial court gave the following instruction requested by plaintiff, which was duly excepted to by defendant:

> "I instruct you that I have found as a matter of law that Defendants had no right to take possession as and when it did of the tractor and trailer being used by Plaintiff, and that Plaintiff had the right to possession of that tractor and trailer. Therefore, I instruct you that, as a matter of law, Defendants converted the tractor and trailer as to Plaintiff, and are liable for the damages suffered by Plaintiff, if any, as a result thereof."

In asserting that, as a matter of law, defendant converted the tractor, plaintiff claims: (1) that defendant failed to prove that the loan payments were accelerated as allegedly required by the security agreement; and (2) that ORS 481.410(3)[4] required

_____

[3]Defendant does not assign as error the trial court's direction of a verdict on the conversion of the trailer.

[4]ORS 481.410(3) provides:

"A security interest holder or lessor may, without the consent of the owner, assign his interest in a vehicle to a person other than the owner without affecting the interest of the owner or the validity or

defendant to give plaintiff notice of the assignment before it could lawfully repossess the tractor.

The security agreement provided in part:

> "Upon such default and at any time thereafter Bank *may* declare all Obligations secured hereby immediately due and payable and *shall* have the remedies of a secured party under the Uniform Commercial Code. * * *" (Emphasis supplied.)

There is no dispute that Foster was in default on the loan and that the Bank required defendant to pay off the loan balance immediately after plaintiff's check had not cleared. We read nothing in the security agreement, however, to require defendant to undertake the formality of accelerating payments before it could repossess the truck. The language of the security agreement is permissive as to acceleration and mandatory as to remedies under the Uniform Commercial Code, which would include ORS 79.5030.[5]

The real crux of the problem with the trial court's instruction is whether ORS 481.410(3) requires notice to a transferee of the debtor's interest that the security interest has been assigned before a lawful repossession may occur. This is strictly a legal issue and its resolution is determinative of whether plaintiff can maintain an action for conversion of the tractor. We conclude that the statute does not require such notice.

The effect of the statute is to protect a debtor, transferee or other person, who without notice of assignment continues to pay the original security interest holder, from an action by the assignee of the

---

priority of the interest, but a person without notice of the assignment is protected in dealing with the security interest holder or lessor as the holder of the interest until the assignee files in accordance with ORS 79.1010 to 79.5070."

[5] ORS 79.5030 provides:

"Unless otherwise agreed a security party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. * * *"

security interest.[6] In the instant case there was no protected "dealing" by plaintiff or Foster with the Bank, which was the original security interest holder. Foster had been in default for several months and plaintiff, who apparently had made some agreement to make the payments current by November 22, 1974, had also failed to remedy the situation. Under these circumstances ORS 481.410 (3) afforded plaintiff no protection against a repossession complying with ORS 79.5030. Thus, as a matter of law defendant was entitled to repossess the tractor, so long as it could be done without a breach of the peace. There is no dispute in this case that defendant's repossession of the tractor complied with ORS 79.5030.

The trial court erred in instructing the jury that defendant had converted the tractor when, in fact, defendant had a legal right to repossess it. The plaintiff's cause of action for conversion of the tractor should not have been submitted to the jury and judgment thereon must be reversed.

## II

Defendant also contends that the trial court erred in denying its motion for a directed verdict on the issue of punitive damages for both the tractor and trailer. It is clear that defendant lawfully repossessed the tractor so any award of punitive damages as to its taking was erroneous. The taking of the trailer, however, was admitted by defendant to constitute a conversion and, therefore, we are required to review the evidence to determine if it supports an award of punitive damages.[7]

---

[6]The Bank's security interest in the tractor was perfected pursuant to former ORS 481.412 and, under ORS 79.3020(2), defendant, as assignee of the Bank's interest, was also a holder of a perfected security interest and subject to the provisions of the Uniform Commercial Code.

[7]Defendant does not contend that the trial court's definition of conduct warranting the award of punitive damages was erroneous; so we need not decide whether the instruction was improper under *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978). *Hemstreet v. Spears,* 282 Or 439, 579 P2d 229 (1978).

■ The evidence adduced at trial, viewed in the light most favorable to the plaintiff, showed that defendant after having located the tractor and trailer in Louisiana contacted its attorney to determine whether it had the right to take the trailer as well as the tractor. Defendant's president, Creager, testified that he told the attorney that the trailer was not defendant's or the one covered by the security agreement. Creager further stated that the attorney advised him to bring the trailer and tractor back if they were attached. The attorney testified that he could not remember if Creager had told him that the trailer was not covered by the security agreement and could not remember whether he told Creager to bring him back both the tractor and trailer. The evidence also disclosed that defendant had arranged, prior to repossession, for the tractor and trailer to haul a load on its return trip from Louisiana. This was accomplished and resulted in a net profit for defendant of $100, after deducting the expenses of flying an employe to Louisiana to repossess the equipment. After the trailer was returned, it was locked in defendant's storage yard. An employe of defendant testified that the trailer was locked up to prevent plaintiff from taking it before defendant could locate the trailer that was subject to the security agreement. A minimal effort was made to contact plaintiff and arrange for the return of his trailer.

Defendant argues that the holding and facts in *Perry v. Thomas et al.,* 197 Or 374, 253 P2d 299 (1953), are nearly in point with the facts of the instant case. There the court held there was insufficient evidence to justify an award of punitive damages because the record was "clear that defendants' acts were prompted by a misunderstanding by them of their legal rights." *Perry v. Thomas et al., supra* at 394. The record is not so clear in the instant case. The jury could have disbelieved Creager's testimony that he had the go-ahead from his attorney because: (1) the attorney could not remember giving such advice; (2) defendant had already arranged for a load to be carried so a

trailer would be needed; and (3) after its return to Portland, defendant had the trailer locked to prevent its removal by plaintiff. We conclude that there was sufficient evidence from which the jury could have concluded that defendant's conduct amounted to deliberate disregard of or reckless indifference to plaintiff's rights in the trailer.[8] The trial court did not err in submitting the issue of punitive damages to the jury.

## III

■ Defendant's final assignment of error relates to the trial court's failure to include a place on the verdict form for an award of nominal damages to the plaintiff. The verdict form, for each cause of action, provided three spaces, one each for general, special and punitive damages. The jury was instructed that it could award nominal damages if plaintiff suffered merely a trifling loss.

We find no error in the trial court's action. The instructions and the verdict form taken together are sufficiently clear that the jury could *not* be confused into thinking, as defendant argues, that (1) the trial court believed substantial damages had been suffered by plaintiff or (2) the verdict form precluded them from awarding nominal damages. They could easily have awarded nominal damages in any of the spaces provided.

Affirmed in part; reversed in part.

---

[8] The trial court instructed the jury that "[w]antonness conduct [sic] is conduct amounting to a deliberate disregard of the rights of others or a reckless indifference to such rights." As already noted, no exception was taken to the standard of conduct applied by the trial court. *See* n 6, *supra.*