612 So.2d 1108 (1992)
Lester IVY
v.
GENERAL MOTORS ACCEPTANCE CORPORATION and American Lenders Service Company of Jackson, Inc.
No. 89-CA-1359.
Supreme Court of Mississippi.
December 17, 1992.
*1109 Eugene C. Tullos, Tullos & Tullos, Raleigh, John S. Knowles III, Brantley & Knowles, Jackson, for appellant.
Chris J. Walker, William C. Reeves, Al Nuzzo, Markow Walker Reeves Firm, Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
In this case, a delinquent debtor complained about the manner in which a creditor's agents repossessed his 1986 Chevy van. The creditor's agents had employed a self-help method, which is still allowed under Mississippi law. The agents' employment of this method, the debtor urged, should be deemed improper since it allegedly resulted in a breach of peace and personal injuries. The debtor, Lester Ivy, concluded that the impropriety and the "maliciousness" of the manner in which the agents repossessed the van warrants imposition of both actual and punitive damages and sued the finance company, GMAC, and its agents, American Lenders, in the Circuit Court of Smith County.
The jury agreed with the debtor and awarded $5,000 in actual damages and $100,000 in punitive damages. The trial judge, however, disagreed to an extent; he granted the creditor's motion for a judgment notwithstanding the verdict (j.n.o.v.) vis-a-vis the punitive-damages award.
The debtor appealed, and the creditor cross-appealed. This Court affirms.

A. The Facts
No one disputes that 37-year-old Lester Ivy of Mount Olive defaulted on his van loan. As a result of Ivy's default, the creditor  General Motors Acceptance Corporation ("GMAC")  hired American Lenders Service Company of Jackson to repossess Ivy's van.[1] On March 14, 1988  around 6:30 a.m.  Dax Freeman and Jonathan Baker of American Lenders drove to Lester Ivy's home. They drove on Ivy's gravel driveway, which is about a quarter-mile long, past a chicken house and the van parked near Ivy's mobile home. They quietly attempted to start the van, but their attempt failed.[2] They then hitched *1110 the van to their tow truck and towed it away.
When Freeman and Baker reached the end of Ivy's driveway, Freeman stopped the tow truck and checked on the van. At that point, Freeman noticed someone running from the chicken house toward the mobile home.[3] Freeman jumped into the tow truck, drove off Ivy's property, and onto adjacent Chain Road. They drove a short distance and approached the intersection of Chain Road and Highway 35. Ivy had decided to "chase after" Freeman and Baker because he thought they were stealing his van. At that point, a pickup truck driven by Ivy passed Freeman and Baker.[4] Ivy pulled in front of the tow truck and "slammed on his brakes."[5] Freeman "hit the brakes" but was unable to stop before a "slight" collision with the rear bumper of Ivy's truck occurred.[6]
Ivy exited his truck, and Freeman informed him that he and Baker worked for American Lenders and were repossessing his truck per GMAC's request. According to Freeman, Ivy responded that he would have given him the keys to the van if he had simply asked. Ivy denies making that statement.
After showing Ivy some "official-looking" documents which seemed to validate the repossession,[7] Ivy retrieved his personal belongings from the van.[8] According to Freeman, he asked Ivy if he wanted to call the sheriff's department to report the accident; Ivy said "no."[9] Freeman then provided Ivy with a telephone number to call in order to get his van back. At that point, they all departed.
About seven months following the repossession  on October 20  Ivy filed a complaint against GMAC and American Lenders (hereinafter collectively referred to as "GMAC") in the Smith County Circuit Court. Ivy contended: (1) that under Mississippi law, self-help repossession is permissible so long as it can be accomplished without a breach of peace; and (2) that Freeman and Baker's repossession of his van was invalid since they breached the peace and "caused him personal injuries." Ivy requested both actual and punitive damages. GMAC denied that Freeman and Baker breached the peace and that the repossession was invalid.
Upon completion of a trial, a jury awarded Ivy $5,000 in actual damages and $100,000 in punitive damages.[10] GMAC subsequently filed for a judgment notwithstanding the verdict/new-trial motion. The circuit judge granted the j.n.o.v. motion with regard to the punitive-damages award and *1111 set aside the $100,000 punitive damage award.

B. The Issues
Ivy appealed and raised the following issue:
Whether the trial judge erred in granting GMAC's motion for a judgment notwithstanding the verdict concerning the jury's award of punitive damages to Ivy?
GMAC cross-appealed and raised numerous issues for analysis:
Whether the trial judge erred in not directing a verdict for GMAC, not setting aside the jury's verdict in its entirety or, alternatively, ordering a new trial on all issues since a breach of peace did not occur as a matter of law?
Whether the trial judge erred when he refused to strike most or all of the prospective jurors tendered to GMAC after liability insurance was mentioned and an overwhelming majority of the prospective jurors indicated their belief that GMAC was wrong in not contacting Ivy before repossessing his vehicle, prior to hearing any evidence or the applicable law?
Whether the trial judge abused his discretion during the course of the trial by overruling GMAC's motion in limine and repeated objections to Ivy's attorney mentioning "replevin" when a writ of replevin is not necessary for self-help repossession?
Whether the trial judge was correct when he set aside the jury verdict of $100,000 punitive damages as there was no credible evidence presented by Ivy to support the award of punitive damages and any award of punitive damages violates both the U.S. and Mississippi Constitutions?
Whether Ivy properly perfected his appeal from the Circuit Court of Smith County to the Mississippi Supreme Court as prescribed by Miss.S.Ct.R. 3(C)?
In addition to these five issues, GMAC raised several miscellaneous issues and sub-issues. GMAC's issues will be analyzed first.

II. ANALYSIS

A. GMAC's Issue # 1: Whether the Jury Erred in Awarding Actual Damages?
GMAC contends that its agents did not breach the peace and, therefore, it should not have been held liable for actual damages. Ivy, of course, disagrees.
Mississippi law authorizes a creditor or secured party to repossess collateral without judicial process if he or she can do so without breaching the peace. Miss. Code Ann. § 75-9-503 (1972). The legislature did not define "breach of peace," but this Court has provided some indication. For example, this Court has held that entering a private driveway to repossess collateral without use of force does not constitute a breach of peace. Dearman v. Williams, 235 Miss. 360, 370, 109 So.2d 316, 320-21 (1959); Martin v. Cook, 237 Miss. 267, 276, 114 So.2d 669, 670 (1959); see Butler v. Ford Motor Credit Co., 829 F.2d 568, 569 (5th Cir.1987).
This Court has also held that a creditor, who repossesses collateral despite the fact that the debtor has withheld his or her consent or has strongly objected, did not breach the peace. Commercial Credit Co. v. Cain, 190 Miss. 866, 868-70, 1 So.2d 776, 777-78 (1941); Furches Motor Co. v. Anderson, 216 Miss. 40, 52-53, 61 So.2d 674, 680 (1952).
Courts in other jurisdictions have generally held that the use of trickery or deceit to peaceably repossess collateral does not constitute a breach of peace. See Parks v. Associates Commercial Corp., 181 Ga. App. 235, 351 S.E.2d 661 (1986); Speigle v. Chrysler Credit Corp., 56 Ala.App. 469, 323 So.2d 360, cert. den. 295 Ala. 420, 323 So.2d 367 (1975); Cox v. Galigher Motor Sales Co., 158 W. Va. 685, 213 S.E.2d 475 (1975); Thompson v. Ford Motor Credit Co., 324 F. Supp. 108 (D.C.S.C. 1971). But see Chrysler Credit Corp. v. McKinney, 38 UCC Rep.Serv. 1409 (Ala. 1984); Walker v. Walthall, 121 Ariz. 121, 588 P.2d 863 (1978).
*1112 A Florida Court of Appeal opined that a debtor's "physical objection"  "even from a public street"  bars repossession. See Marine Midland Bank-Central v. Cote, 351 So.2d 750, 752 (Fla. 1st DCA 1977).
A Georgia Court of Appeal found a breach of peace in a case in which: (1) the creditor repossessed the debtor's automobile by blocking it with another automobile; (2) the creditor informed the debtor that he could just "walk his a  home"; and (3) the debtor "unequivocally protested" the manner of repossession. See Deavers v. Standridge, 144 Ga. App. 673, 242 S.E.2d 331, 334 (1978).
The Ohio Supreme Court opined that the use of intimidation or acts "fraught with the likelihood of violence" constitutes a breach of peace. See Morris v. First Nat'l Bank & Trust Co., 21 Oh.St.2d 25, 254 N.E.2d 683, 685-87 (1970); accord Kirkwood v. Hickman, 223 Miss. 372, 78 So.2d 351 (1955); Harris Truck & Trailer Sales v. Foote, 58 Tenn. App. 710, 436 S.W.2d 460, 463-64 (1968).
In sum, much of the litigation involving self-help repossession statutes involves the issue of whether a breach of peace has occurred. Disposition of this issue is not a simple task:
Since physical violence will ordinarily result in a breach of peace, the secured party's right to repossession will end if repossession evokes physical violence, either on the part of the debtor or the secured party. At the other extreme from physical violence, a secured party may peaceably persuade the debtor to give up the collateral so that no breach of peace occurs. Between those two extreme situations  one in which violence occurs and the other in which the debtor peaceably gives up the collateral  lies the line which divides those cases in which the secured party may exercise self-help repossession and those in which he must resort to the courts. As with most dividing lines, the line between those two extremes is sometimes hard to locate and, even if it is located, it sometimes moves.
9 W. Hawkland, Uniform Commercial Code Series, at § 9-503:03 (1991).
Application of the foregoing principles to the evidence viewed in a light most favorable to the verdict leads this Court to conclude that a breach of peace did occur. This Court, therefore, affirms on this issue.

B. GMAC's Issue # 2
This issue actually comprises two sub-issues; they are addressed individually.

1. Sub-Issue: Whether 25 Prospective Jurors Should Have Been Excluded In View of Their Pre-Trial Beliefs?

(a)
Through the first of the two sub-issues, GMAC contends that it did not receive a fair trial because, during voir dire, 25 of 36 prospective jurors related their belief that GMAC should have provided Ivy with pre-seizure notice even though pre-seizure notice is not required by law. Of these 25 prospective jurors, 10 were ultimately selected to sit on the jury. Thus, GMAC concludes: (1) 10 jurors "had opinions on liability before they heard any evidence and the applicable Mississippi law"; and (2) these jurors should be deemed "incompetent" since they "`formed and expressed an opinion as to ... one of the material issues in the case.'" See GMAC Brief at 11-12 (emphasis in original) (quoting 50 C.J.S. Juries § 234(e), at 985-86 (1947)).
Ivy rejects GMAC's contention on the basis that these 25 jurors assured the trial judge that "if [he] instructed them that the law did not require [GMAC] to give prior notice of [its] intention to seize the vehicle, [then] they could follow this law and [would] not hold the lack of prior notice against [GMAC]."

(b)
Case law dictates that "each juror [must] keep an open mind until the case has been submitted to the jury." United States v. Klee, 494 F.2d 394, 396 (9th Cir.1974). An open mind is critical because:
[A]n opinion [prematurely] formed could only be removed, if at all, by evidence. This in effect shift[s] the burden of proof *1113 and place[s] upon the defendants the burden of changing by evidence the opinion thus formed. A juror having in discussion not only formed but expressed his view as to the guilt or innocence of the defendant, his inclination thereafter would be to give special attention to such testimony as to his mind strengthened, confirmed or vindicated the views which he had already expressed to his fellow jurors, whereas, had there been no discussion and no expression of tentative opinion, he would not be confronted with embarrassment before his fellow jurors should he change the tentative opinion which he might entertain from hearing evidence.
Winebrenner v. United States, 147 F.2d 322, 328 (8th Cir.1945); accord United States v. Aaron Burr, 25 F.Cas. 49, 50 (C.C.Va. 1807) ("Such a person may believe that he will be regulated by testimony, but the law suspects him, and certainly not without reason. He will listen with more favor to that testimony which confirms, than to that which would change his opinion; it is not to be expected that he will weigh evidence or argument as fairly as a man whose judgment is not made up in the case."); State v. Washington, 182 Conn. 419, 438 A.2d 1144, 1148 (1980) ("Once a juror has expressed an opinion ... the die may well have been cast.").
Of course, as a matter of institutional imperative, "our law presumes that jurors follow the trial judge's instructions, as upon their oaths they are obliged to do." Parker v. Jones County Community Hosp., 549 So.2d 443, 446 (Miss. 1989); see also Collins v. State, 594 So.2d 29, 35 (Miss. 1992). In order to take a case "out of the general principle," the aggrieved party must sufficiently rebut the presumption that jurors followed the law as instructed. Parker, 549 So.2d at 446 (emphasis added); see generally Arledge v. McFatter, 605 So.2d 781, 783 (Miss. 1992) (case in which plaintiff rebutted this presumption).

(c)
Neither GMAC nor Ivy disputes that: (1) 25 of the 36 prospective jurors related their belief that GMAC should have provided Ivy with pre-seizure notice; and (2) that these same 25 individuals assured the trial judge that they would follow the law as instructed notwithstanding their beliefs regarding prior notification.
Application of the law to these facts leads this Court to conclude that GMAC failed to sufficiently rebut the presumption that the jurors followed the law as instructed.

2. Sub-Issue: Whether Ivy's References to Liability Insurance Were Prejudicial and Reversible Errors?

(a)
Through the second of the two sub-issues, GMAC contends that it did not receive a fair trial by an impartial jury because Ivy (Ivy's counsel) twice uttered the "I" word. In other words, Ivy made comments from which the jurors could deduce that the defendant was covered by liability insurance.
The first instance occurred during voir dire when Ivy asked a juror whether the insurance company which employed her had ever been represented by GMAC's law firm:
Ivy: Having heard the names of those lawyers, have any of you ever heard of any of those lawyers before today?
Juror: I have through my work.
Ivy: Let me see, do you have some type of business?
Juror: I work for an insurance company and I don't deal with lawyers myself, but I have heard of the firm.
Ivy: All right. You have heard of that firm?
Juror: Seems like.
Ivy: All right. And to your knowledge, that firm does not represent the insurance company you work for?
Juror: I'm not sure. What is the name of the firm? I mean, I 
Ivy: It's Markow, Walker, Reeves and Anderson.
Juror: I don't believe so. Liberty Mutual, they don't represent us.

*1114 Ivy: All right. And the fact that you've heard of them, would that have any affect one way or the other upon your verdict?
Juror: No, sir.
Rec.Vol. II, at 1-S.
The second instance occurred during cross-examination of James Freeman, owner of American Lenders and brother of Dax Freeman, who repossessed the van:
Ivy: You've got here [on this repossession invoice] "Insurance deduct." What does this mean? It's $35.00.
Freeman: That's the insurance charge on a repossession. And when it says "deduct," that's our home office. We don't write the insurance; American Lenders writes the insurance. And when we pay royalties on our franchise we don't pay it on the insurance because that's a direct cost to us.
Id. at 81; see also Rec.Exh. P-6 (repossession invoice).
Ivy counters that these references were neither "direct nor by innuendo" and could not have been construed by the jury to mean that GMAC had liability insurance.

(b)
Particularly relevant to the disposition of this issue is West Cash & Carry Bldg. Materials v. Palumbo, 371 So.2d 873, 876 (Miss. 1979). In Palumbo, Justice Patterson noted: "The general rule that insurance should not be mentioned before a jury has long been adhered to by this Court because it was thought to prejudice a defendant." West Cash & Carry Bldg. Materials v. Palumbo, 371 So.2d 873, 876 (Miss. 1979) (citing Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902)). However, "[t]he likelihood of the [defendant] being prejudiced by the mention of insurance has been diminished in recent years because most jurors, and other citizens, ... share the common knowledge [regarding coverage of] liability insurance." Id. Such awareness has meant that the "mere mentioning of insurance in a trial is not cause for mistrial in all cases." See, e.g., Anchor Coatings v. Marine Industrial Residential, Inc., 490 So.2d 1210, 1219 (Miss. 1986) (Defendant asked expert witness "who was paying him to testify." Witness responded: "The insurance company." Held: Trial judge did not abuse discretion in denying motion for mistrial.) (citing cases).
The trial judge "is in the most advantageous position to correctly rule whether prejudice, or the lack of it, has emanated from the comment of a witness." Palumbo, 371 So.2d at 876. Therefore, "a large discretion has been [vested in] the trial [judge] in ruling upon comments concerning insurance arising during a trial." Id. (citing Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963)).
Of utmost importance, a judge can only make a determination of prejudice if the defendant makes a timely objection and motion for a mistrial. Strictly speaking, timeliness means the objection and motion must be made contemporaneously with the allegedly improper utterance. This is well-known as the "contemporaneous objection rule." Id. at 875-76. Contemporaneousness is critical because it allows the judge to avert a mistrial, if possible, by admonishing the jury to disregard the utterance. Id. at 876.

(c)
In the case sub judice, GMAC voiced its objection to Ivy's repeated references to "insurance."
In the first instance  at the conclusion of voir dire  GMAC moved "to quash the entire [prospective juror] panel." GMAC contended that the exchange between Ivy and the juror who works for an insurance company "tainted the entire [prospective juror] panel with the clear implication [that] the Defendants ... were represented by a firm for an insurance company." The trial judge denied the motion without explanation.
GMAC also moved for a mistrial after Ivy asked James Freeman to explain the phrase  "Insurance deduct"  which was written on the repossession invoice. The trial judge again denied the motion without explanation.

*1115 (d)

Applying the law to the facts, this Court cannot conclude that Ivy's utterances constituted reversible errors. See Palumbo, 371 So.2d at 876. This Court, therefore, affirms on this issue.

C. GMAC's Issue # 3: Whether Ivy's References to a Writ of Replevin Were Prejudicial and Reversible?

1.
Through this issue, GMAC complains that Ivy violated its right to a fair trial by repeatedly referring to the fact that GMAC did not acquire a writ of replevin prior to repossessing the van. GMAC explains that the Retail Installment Sales Contract included a so-called "insecurity clause." This clause, as well as Mississippi law, empowered GMAC to immediately repossess the van upon default by Ivy. This clause also empowered GMAC to repossess the van without first acquiring a writ of replevin. Thus, GMAC made a motion in limine prior to trial and requested that Ivy be precluded from referring to the fact that no writ was sought or obtained. The trial court denied the request. GMAC contends that the judge's denial constituted a reversible error because it allowed the plaintiff to interrogate almost every witness about this unnecessary and irrelevant writ of replevin and thus prejudiced the jury.
Ivy counters that the error, if any, should be deemed harmless since: (1) the judge instructed the jury that a writ was not required in order to repossess the van; thus the trial judge took the curative action to eliminate any prejudicial effect; and (2) jurors are presumed to follow the law as instructed.

2.
The trial judge "is in the most advantageous position to correctly rule whether prejudice, or the lack of it, has emanated from [an allegedly improper] comment." Palumbo, 371 So.2d at 876. This Court holds that GMAC has failed to prove that the judge in this case abused his discretion by denying the motion.

D. GMAC's Issue # 4

1. Issue: Whether Mississippi's System for Awarding Punitive Damages Is Constitutional?
Through this issue, GMAC contends that Mississippi's system or procedure for awarding punitive damages is unconstitutional. GMAC relies primarily on the United States Supreme Court's recent opinion in which the justices repeatedly expressed their "concern" over the constitutionality of Mississippi's "system." See Pacific Mut. Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). In Haslip, the Court reviewed the constitutionality of Alabama's system for awarding punitive damages. The Court concluded that Alabama's system met minimum due process requirements because a judge or jury's discretion in determining a punitive-damages award is limited. In other words, the discretion is limited or "confined to deterrence and retribution." Id. at ___, 111 S.Ct. at 1044, 113 L.Ed.2d at 21. Thus, the judge and jury in Alabama are "enlightened ... as to the punitive damages' nature and purpose." Id. Knowing the nature and purpose of a punitive-damages award, the Court added, "reasonably accommodate[s a defendant's] interest in rational decision making and Alabama's interest in meaningful individualized assessment of appropriate deterrence and retribution." The Court then applauded the Alabama Supreme Court for providing "an additional check on the jury's or trial court's discretion":
It [the Alabama Supreme Court] undertakes a comparative analysis. It then applies the detailed substantive standard it has developed for evaluating punitive awards. In particular, it makes its review to ensure that the award does "not exceed an amount that will accomplish society's goals of punishment and deterrence." ... This appellate review makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition.
Id. at ___, 111 S.Ct. at 1045, 113 L.Ed.2d at 21-22 (citations and footnote omitted). *1116 In short, "[a]s long as the discretion is exercised within reasonable constraints, due process is satisfied." Id. at ___, 111 S.Ct. at 1035, 113 L.Ed.2d at 10 (citing cases).
Upon concluding its analysis of the constitutionality of Alabama's system for awarding punitive damages, the Supreme Court footnoted its belief that Mississippi's system is  more likely than not  unconstitutional. More specifically, the Court seems to believe that a judge or jury's discretion is not limited or confined under Mississippi law; that the nature and purpose of a punitive-damages award is not defined; and that a substantive and comparative "check" is not conducted by the Mississippi Supreme Court. The Court explained, "an amount awarded would be set aside or modified only if it was `manifestly and grossly excessive'" or "would be considered excessive when `it evinces passion, bias and prejudice on the part of the jury so as to shock the conscience.'" Id. at ___ n. 10, 111 S.Ct. at 1045 n. 10, 113 L.Ed.2d at 22 n. 10 (citing Bankers Life & Cas. Co. v. Crenshaw, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988)).
However, in Andrew Jackson v. Williams, 566 So.2d 1172, 1182-92 (Miss. 1990), this Court meticulously explained that a judge or jury's discretion is limited or confined. This Court defined the nature and purpose of a punitive-damages award. And this Court provided a substantive and comparative "check" on the amount which the jury awarded the plaintiff.
In sum, this Court rejects GMAC's contention that Mississippi's system for awarding punitive damages is unconstitutional. A related issue assigned by Ivy and concerning the jury's award of punitive damages will be discussed in § G, infra. However, the issue assigned by Ivy concerning the jury's award of punitive damages will be discussed in Subdivision G herein.

E. GMAC's Issue # 5: Whether Ivy Properly Perfected His Appeal?

1.
Through this issue, GMAC contends that Ivy "failed to properly perfect his appeal." GMAC explains that Ivy failed to file his notice of appeal until after the time for filing a notice expired. More specifically, the undisputed date of judgment is November 27, 1989. The 30-day time limit expired on December 27, 1989. Ivy filed on December 20, 1989, a letter which he wrote to both the circuit clerk and the court reporter  informing them that he "desire[d] to appeal [this] cause." Ivy filed his "Notice of Appeal" on December 28, 1989.

2.
Pursuant to Mississippi Supreme Court Rule 4(a), a notice of appeal must be filed "within 30 days after the date of entry of the judgment or order appealed from." This is a "hard-edged, mandatory" rule which this Court "strictly enforces." Tandy Electronics, Inc. v. Fletcher, 554 So.2d 308, 309-12 (Miss. 1989).
Notwithstanding the fact that the 30-day rule is "hard-edged," this Court will not dismiss an appeal "for informality of form or title of the notice of appeal." See Miss. Sup.Ct.R. 3(c).
Because "formality of form or title" is not required under Rule 3(c), this Court concludes that the letter which Ivy wrote to the circuit clerk and the court reporter sufficed as a notice of appeal  albeit Ivy's counsel should have been more conscientious in constructing a less ambiguous notice. This Court affirms on this issue and reaffirms the "hard-edged, mandatory" 30-day Rule 4(a).

F. GMAC's Miscellaneous Issues
GMAC raised issues in his brief which it did not list in his "Statement of the Issues."

1. Issue: Whether the Jury Verdict Traversed the Overwhelming Weight of Evidence?
Through the first of these two remaining issues, GMAC contends that the jury's verdict on liability and compensatory damages traversed the overwhelming weight of the evidence and, therefore, the trial judge erred in denying its motion for a new trial. GMAC substantiates its contention by citing *1117 the alleged errors which have been discussed in the preceding sections of this opinions (e.g., Ivy's references to "insurance" and to the writ of replevin).
This Court has perused the evidence and concludes that the judge did not abuse his discretion in denying GMAC's motion. See Kitchens v. Mississippi Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss. 1989) (discussing standard applicable to review of judge's denial of motion for a new trial).

2. Issue: Whether Ivy Improperly Employed the "Golden Rule?"
Through the second of the remaining issues, GMAC contends that Ivy improperly employed the "Golden Rule" during his closing argument and that the trial judge erred in denying his motion for a mistrial. A "Golden Rule" argument is one "by which jurors are urged to place themselves or members of their families or friends in the place of [the] person who has been offended and to render a verdict as if they or either of them or member of their families or friends was similarly situated." Black's Law Dictionary 623 (5th ed. 1979); see also Danner v. Mid-State Paving Co., 252 Miss. 776, 173 So.2d 608, 611 (1965).
GMAC failed to cite the specific instances when Ivy allegedly committed the "Golden Rule" violations. Perusal of Ivy's closing argument, however, reveals two instances to which GMAC may be referring.
However, if these are the references, this Court concludes that Ivy's references to "the people of Smith County" did not constitute "Golden Rule" violations and, therefore, the judge did not err in denying GMAC's motion for a mistrial. Danner, 173 So.2d at 613.

3. GMAC's Remaining Issues
GMAC's remaining issues and sub-issues have been deemed devoid of merit; a published discussion of them is unnecessary.

G. Ivy's Sole Issue: Whether the Judge Erred in Overturning the Jury Award of Punitive Damages?

1.
Basically, Ivy contends that his version of the facts  recounted in Section I(A) of this opinion  supports the jury award of punitive damages. Thus, Ivy concludes, the trial judge erred by overturning the verdict. GMAC counters that the evidence simply did not support the award and that this Court should affirm.
Disposition of this issue requires a determination of whether a preponderance of the evidence  viewed in a light most favorable to the verdict  supports the punitive-damages award. Black v. Peoples Bank & Trust Co., 437 So.2d 26, 28 (Miss. 1983) (discussing the applicable standard of review in a case involving a self-help repossession of a pickup truck).
Mississippi law authorizes a creditor or secured party to repossess collateral without judicial process if he or she can do so without breaching the peace:
Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under the Section 9-504 [§ 75-9-504].
Miss. Code Ann. § 75-9-503 (1972); see also Martin v. Cook, 237 Miss. 267, 114 So.2d 669, 670 (1959); Butler v. Ford Motor Credit Co., 829 F.2d 568, 569 (5th Cir.1987).
If the creditor breaches the peace, then "the repossession [will be deemed] wrongful, and the debtor may sue the [creditor] in conversion for return of the collateral or [actual and consequential] damages, plus punitive damages in the proper case." See 9 W. Hawkland, supra at § 9-503:03 (1991) (emphasis added).
In Mississippi, this Court has allowed an award of punitive damages in cases involving a repossession attended by "malice, *1118 fraud, oppression or wilful wrong evincing a disregard of the rights" of the debtor. See Bradley v. Associates Discount Corp., 230 Miss. 131, 138-39, 92 So.2d 468, 471-72 (1957) (case in which this Court did not find requisite intent but did discuss cases in which it did find requisite intent); see also Rec.Vol. I, at 70 (Jury Instruction P-14: [I]n order to recover punitive damages, the plaintiff must prove ... that the actions ... was [sic] wanton, malicious or fraudulent in nature."); see generally Purver, Punitive Damages for Wrongful Seizure of Chattel By One Claiming Security Interest, 35 A.L.R.3d 1016, 1025 (1971 & Supp. 1992) (punitive damages warranted where "malice, fraud, oppression, gross negligence, or a reckless disregard of the rights of the chattel holder" is proved).
Thus, a creditor must do more than cause a mere breach of peace before he or she can be held liable for punitive damages. Restated, a breach of peace may be deemed tortious  for which the creditor will be held liable for actual and consequential damages  but the tortiousness of the conduct must rise to a heightened level before punitive damages may be imposed. Cf. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1187-88 (Miss. 1990) ("[A]s a matter of law, `ordinary torts ... do not rise to the heightened level of an independent tort' which warrant imposition of punitive-damages liability.").
There are a few Mississippi cases involving self-help repossession and a punitive-damages issue. In a seminal case, Commercial Credit Co. v. Spence, 185 Miss. 293, 184 So. 439 (1938), the creditor's agent repossessed the debtor's car while it was parked at a hotel, while the debtor's wife was inside the hotel. Entry was gained by breaking out one of the car's windows. The jury awarded punitive damages under these facts, and this Court affirmed. This Court rationalized its affirmance accordingly: "the conduct of [the agent] in breaking into the automobile and taking it by that means was ... [an] offense ... properly to be characterized as an aggravated and oppressive trespass, for which punitive damages are allowable in the discretion of the jury." Id. at 298, 184 So. at 442. See also Kirkwood v. Hickman, 223 Miss. 372, 78 So.2d 351 (1955);[11]Furches Motor Co. v. Anderson, 216 Miss. 40, 48 & 52-54, 61 So.2d 674, 679-81 (1952);[12]Commercial Credit Co. v. Cain, 190 Miss. 866, 868-70, 1 So.2d 776, 777-78 (1941).[13]
In Bradley v. Associates Discount Corp., 230 Miss. 131, 138-39, 92 So.2d 468, 469-71 (1957), the creditor's agent repossessed a delinquent debtor's Studebaker from a mechanic's parking lot where it had been left to be repaired. Upon learning of the repossession, the debtor sued for actual and punitive damages on the bases: (1) that the car had been taken without permission from where it had been left to be repaired; (2) that the agent had committed a fraud by misrepresenting to the mechanic that the debtor's lawyer had advised the creditor that the debtor was bankrupt and could not make further payments on the *1119 car; and (3) that personal belongings which were in the car during repossession were never returned to the debtor. Based on the foregoing evidence, the trial judge refused to submit a punitive-damages issue to the jury. The jury did, however, award the debtor $454.53 in actual damages for reasons not revealed in the opinion. The debtor appealed the judge's refusal to submit the punitive-damages issue, and this Court affirmed. This Court explained that the evidence fell short of proving "fraud, oppression, or wilful wrong, evincing a disregard for the rights of [the debtor]." Id. at 134-39, 92 So.2d at 472 (citing Spence, 185 Miss. at 293, 184 So. at 439).
In sum, Mississippi case law provides little guidance on determining whether a creditor or agent's conduct is so malicious, oppressive, or fraudulent that an award of punitive is warranted.[14] Nonetheless, viewing the evidence in a light most favorable to the plaintiff and viewing Mississippi's allowance of "self-help" repossession, this Court concludes that Ivy has failed to prove by a preponderance that GMAC's agents' repossession of his van was attended by "malice, fraud, oppression or wilful wrong evincing a disregard of [his] the rights." In other words, their conduct did not rise to the requisite heightened level of tortiousness to warrant imposition of punitive damages. This Court therefore affirms on this issue.

III. CONCLUSION
This Court affirms on all issues presented through Ivy's appeal and GMAC's cross-appeal.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and SULLIVAN, PITTMAN, BANKS and ROBERTS, JJ., concur.
McRAE J., concurs in part and dissents in part with separate written opinion, joined by DAN M. LEE, P.J.
McRAE, Justice, concurring in part and dissenting in part.
I concur in the Court's decision to affirm the jury verdict and award of actual damages against GMAC and American Lenders. In my view, however, the trial court erred in overturning the jury award of punitive damages. Accordingly, I dissent from the majority's decision to affirm the trial court's grant of judgment notwithstanding the verdict.
The majority complains that "Mississippi case law provides little guidance on determining whether a creditor or agent's conduct is so malicious, oppressive, or fraudulent that an award of punitive [sic] is warranted." While it is true that this Court has not often confronted this issue, the principle is well settled throughout the jurisdictions that punitive damages are proper where creditors seize property in a manner that reflects malice, fraud, oppression, gross negligence, or reckless disregard of the rights of the chattel holder. See, e.g., Kimble v. Universal T.V. Rental, Inc., 65 Ohio Misc. 17, 417 N.E.2d 597 (Ohio Mun. Ct. 1980); Compton v. Creager Trucking Co., 282 Ore. 521, 579 P.2d 1297 (1978); Sanford v. Stoll, 86 N.M. 6, 518 P.2d 1210 (N.M.Ct.App. 1974); Kensinger Acceptance Corp. v. Davis, 223 Ark. 942, 269 S.W.2d 792 (1954); Ray v. Navarre, 47 Okla. 438, 147 P. 1019 (1915); Pagan v. Drake Furniture Co., 73 S.C. 364, 53 S.E. 542 (1906). See generally Annotation, Punitive Damages for Wrongful Seizure of Chattel by One Claiming Security Interest, 35 A.L.R.3d 1016 (1971). In Kirkwood v. Hickman, 223 Miss. 372, 78 So.2d 351 (1955), perhaps the only Mississippi case to directly address this question, the Court found that when a creditor commits a trespass to retrieve secured property in an "intentional and highhanded manner," punitive damages are in order even if the trespass involved no violence. What could possibly be more "highhanded" than going onto a debtor's property without permission, hooking the debtor's van to a tow truck, and hauling it away in plain view of *1120 the debtor with no explanation whatsoever? In such circumstances, the debtor would naturally think his property was being stolen and would immediately set about to recapture the property. If the conduct of the defendants does not qualify as "reckless disregard for the rights of the chattel holder," then I am at a loss to imagine what might fit the description.
In any event, the majority has clearly misapplied the J.N.O.V. standard. In Black v. Peoples Bank and Trust Co., 437 So.2d 26, 28 (Miss. 1983), we stated:
It must be remembered that the standard of appellate review where a judgment n.o.v. has been entered requires this Court to view the evidence in the light most favorable to the plaintiff, disregard any evidence on the part of the defendant in conflict with that favorable to the plaintiff, and if the evidence and reasonable inferences to be drawn therefrom would support a verdict for the plaintiff then such verdict must be reinstated.
The plaintiff's evidence shows that Ivy ran toward the tow truck "hollering and flagging for them to stop" as it began to carry his van away. Freeman, the driver of the tow truck, admits seeing someone running toward him when he got out of the truck to check the van at the end of Ivy's driveway, but he nevertheless continued to drive. Ivy testified that when he caught up with Freeman and Baker in his pickup truck and tried to pass them, Freeman swerved to the left in order to block him from passing. Once Ivy had passed the tow truck and pulled in front of it, he heard Freeman "rev up" the tow truck's engine. The tow truck then plowed into the back of Ivy's pickup truck resulting in a minor sprain to the plaintiff.
This is the story that we must accept as true under our standard for reviewing judgments notwithstanding the verdict. Clearly, given Ivy's version of the events, the jury was fully justified in concluding that the defendants' conduct was oppressive, highhanded, and recklessly unmindful of Ivy's rights.
This entire misadventure could have been avoided if the creditor had simply followed the replevin procedures set out in Miss. Code Ann. § 11-37-101 et seq. While Mississippi still permits creditors to employ the remedy of self-help when retrieving their property from chattle holders, creditors follow that path at their own peril. The defendants in this case took the law into their own hands, and so they should be held fully responsible for the consequences. I would reverse the J.N.O.V. and reinstate the jury's award of punitive damages.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] The security agreement between GMAC and Ivy contained a so-called "insecurity clause," which provided GMAC with the right to immediately repossess the van upon default. Notice was not a prerequisite to repossession.
[2] The record does not reveal where Freeman got keys to the van.
[3] The person, who Freeman saw running toward the mobile home, was Ivy. Ivy testified that prior to running toward the mobile home, he ran toward the tow truck "hollering and flagging for them to stop." Freeman and Baker apparently did not hear or see Ivy at the time.
[4] Ivy testified that, as he attempted to pass the tow truck, Freeman "swerved to the left" in order "to block" him from passing.
[5] Ivy denied that he stopped right in front of Freeman's tow truck and then "slammed on the brakes." Ivy testified that he stopped far ahead of the tow truck  providing Freeman with plenty of room to stop. But Ivy heard Freeman "rev up" the tow truck's engine before Freeman "rammed him." Ivy claims that his head hit the rear window of his truck as a result of the collision, and that he sustained a "severe vertical sprain." Ivy noted, however, that his medical bills totalled only $20.00 and that he did not miss any work.
[6] Freeman testified that he had been driving about 25 to 35 m.p.h.
[7] Ivy notes that Freeman led him to believe that these documents were court documents which gave Freeman the legal right to repossess the van. But Ivy says that he later found out that these "official-looking" documents were not what Freeman represented them to be. Thus, Ivy concludes, Freeman accomplished the repossession through the commission of a fraudulent act. The record does not reveal the nature of these documents; presumably, they were forms from GMAC authorizing American Lenders to repossess the van as its agent.
[8] Ivy conceded that Freeman and Baker "were very nice about that"  i.e., about letting him retrieve his personal belongings. Rec.Vol. II, at 164.
[9] Ivy contends that he flagged down a passerby and asked him to call the sheriff.
[10] The jury also awarded "payoff of the 1986 Chevy van." The trial judge deleted this award since it was included in the actual-damages award. All parties concurred in the deletion.
[11] In Kirkwood, The daughter-in-law of the delinquent debtor was at home with her four young children when the creditor's agents drove up in a truck and informed her that "they were going to get it." The agents were referring to the collateral  a stove. The daughter-in-law testified that she objected to their entry and to the repossession, but "there wasn't anything I could do, they were bigger than I was." In the process of the repossession, the agents spilled water and soot on the premises. The jury awarded punitive damages, and this Court affirmed in view of the "highhanded manner" of repossession.
[12] In Furches, this Court reversed the trial judge's award of punitive damages after concluding that the repossession was "peaceable and without any force or violence." The repossession transpired at night while the car was locked and parked on a car lot.
[13] In Cain, this Court concluded that the non-violent, nonthreatening repossession of a Studebaker  which was parked on a public street and to which the debtor's husband strongly objected  did not constitute a malicious act for which punitive damages should be imposed. The significance of this case is the Court's express rejection of the debtor's contention that the repossession should be deemed "forceful" and a breach of peace since her husband "withheld his consent" and strongly objected. Accord Furches Motor Co. v. Anderson, 216 Miss. 40, 52-53, 61 So.2d 674, 680 (1952).
[14] For an analysis of how other jurisdictions have dealt with this issue, see generally Purver, Punitive Damages for Wrongful Seizure of Chattel By One Claiming Security Interest, 35 A.L.R.3d 1016 (1971 & Supp. 1992).