BRIDGES, P.J.,
for the Court.
¶ 1. Komatsu Financial financed Ellis Contracting’s purchase of excavating equipment. Ellis defaulted and Komatsu unsuccessfully attempted self-help repossession. Komatsu filed a complaint in re-plevin, to which Ellis answered and counterclaimed. Komatsu subsequently filed a motion for summary judgment. The circuit court granted Komatsu’s motion for summary judgment and dismissed Ellis’s counterclaim. Aggrieved, Ellis appeals and advances the following proposition verbatim:
I. THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR THE PLAINTIFF AND IN DISMISSING THE CLAIMS OF THE DEFENDANT HOLDING THERE TO BE NO ISSUES OF MATERIAL FACT AND THAT AS A MATTER OF LAW THE CLAIMS OF DEFENDANT SHOULD BE DISMISSED.
Finding no error, we affirm the circuit court’s decision.
FACTS
¶ 2. Ellis Contracting operates a landfill in Sunflower County, Mississippi. On November 14, 1996, Ellis entered a conditional sales contract with Great Southern Tractor. Although the contract was with Great Southern Tractor, Komatsu Financial actually financed Ellis’s purchase of an earthmoving machine called a dresser— more often identified as a crawler tractor or a dozer.
¶ 3. On December 30, 1996, Ellis and Great Southern Tractor entered a similar agreement for the purchase of two more earthmoving machines commonly called excavators or track hoes. Both agreements provided that Komatsu could execute self-help repossession if Ellis defaulted on the loans. Komatsu also maintained perfected UCC liens on all the equipment.
¶ 4. Ellis later declared Chapter 11 bankruptcy and, pursuant to the bankruptcy court’s order, returned one of the two excavators. Komatsu sold that excavator and deducted the proceeds from the balance remaining on the original purchase agreement. Ultimately, the bankruptcy court dismissed Ellis’s petition for bankruptcy and did not discharge Ellis’s debts to Komatsu. Thus, Ellis owed a balance *807 on their retained excavator as well as the difference between the purchase price and the amount received from the proceeds of the sale of the returned excavator. Likewise, Ellis had not paid the entire balance due on the dozer.
¶ 5. On January 24, 2001, Komatsu sent Ellis a letter. That letter stated that the December 30, 1996 excavator contract had been paid in full. The letter made no reference to the status of the November 14, 1996 dozer contract. Along with the letter, Komatsu sent a copy of the contract marked “cancelled” and a UCC form reflecting Komatsu’s release of their lien on the excavator.
¶ 6. On February 6, 2001, Tom Zubik, operations manager for Komatsu, telephoned Ellis. Zubik informed Ellis that Komatsu sent the January 24 letter by mistake. Zubik also stated that the excavator had not been paid in full. Rather, Ellis still owed Komatsu an unpaid balance of $104,785. The same day, Zubik sent Ellis a letter memorializing the significant portions of their telephone conversation. After Ellis received Zubik’s notification, Ellis resumed monthly payments until September of 2001, but eventually defaulted on the loans on the excavator and the dozer.
¶ 7. On May 2, 2002, Komatsu entered an agreement with Stephens & Michaels Associates, Inc. Stephens & Michaels, a collections agency, agreed to locate the excavator and dozer and recover them through peaceful means. Stephens & Mi-chaels entered an agreement with Butler Towing of Arkansas. Butler agreed to repossess the equipment.
¶ 8. On May 8, 2002, Butler attempted to repossess the equipment from Ellis’s landfill but left without success when Ellis asked them to leave. The next day, Butler tried to repossess again but left when Duane Ellis, president of Ellis Contracting, approached them.
¶ 9. During the pre-dawn hours of May 30, 2002, Butler repossessed the excavator from Ellis’s landfill. No one was at the landfill when Butler took possession of the excavator. However, as Richard Harris, Duane Ellis’s son-in-law, stopped at a gas station for coffee, Harris saw a truck pass by with the excavator on a “low-boy” trailer. Harris informed Duane Ellis that the truck was traveling East on highway 82 towards 1-55.
¶ 10. When Duane Ellis discovered the excavator’s location, he and his wife decided to catch Butler. Ellis suspected that Butler would proceed South on 1-55, towards Great Southern Tractor’s business location. During the pursuit, Ellis contacted the Mississippi Highway Patrol and stated that the excavator had been stolen.
¶ 11. Correct in his assumption, Duane Ellis caught up to the excavator on 1-55, approximately fifty-seven miles from the landfill. Duane Ellis moved his vehicle in front of the truck and forced the truck to the side of the interstate. Shortly afterwards, officers with the Mississippi Highway Patrol responded to the “1-55 incident” where Jason Butler of Butler Towing and Duane Ellis were just short of a physical altercation. After Duane Ellis showed officers a copy of the accidental cancellation letter the officers allowed Ellis to reclaim the excavator.[1] Komatsu made no further attempts to repossess the equipment through Butler or anyone else.
¶ 12. Instead, Komatsu pursued other means to acquire the excavator and dozer. As stated previously, Komatsu filed a complaint in replevin and asked the Sunflower County Circuit Court to grant immediate *808 possession of the equipment. Ellis filed an answer and denied that Komatsu was entitled to immediate possession. Ellis also filed a counterclaim and alleged that Ko-matsu wrongfully seized the equipment and that Komatsu was liable for conversion and trespass.
¶ 13: Komatsu filed a motion for summary judgment pursuant to rule 56 of the Mississippi Rules of Civil Procedure. Following Ellis’s response and a hearing on the motion, the circuit court granted Ko-matsu’s motion for summary judgment and dismissed Ellis’s counterclaim.
ANALYSIS
I. DID THE CIRCUIT COURT ERR IN GRANTING SUMMARY JUDGMENT FOR KOMATSU AND IN DISMISSING THE CLAIMS OF ELLIS HOLDING THERE TO BE NO ISSUES OF MATERIAL FACT AND THAT AS A MATTER OF LAW THE CLAIMS OF DEFENDANT SHOULD BE DISMISSED?
¶ 14. Ellis claims that the circuit court committed reversible error when the circuit court granted Komatsu’s motion for summary judgment and dismissed Ellis’s counterclaim. There are two distinctly separate arguments under this proposition. First, Ellis argues that the circuit court should not have granted Komatsu’s motion for summary judgment because the circuit court erroneously determined that Ellis did not offer a valid defense against Ko-matsu’s claim to immediate possession of the equipment.
¶ 15. Second, Ellis asserts that the circuit court should not have dismissed its counterclaim because the circuit court erroneously held that, without determining whether a breach of the peace occurred, Komatsu could not be held liable for the altercation that occurred during the 1-55 incident. In so finding, the circuit court reasoned that a creditor’s duty to refrain from breaching the peace lapses after one completes repossession. Further, at the time of the 1-55 incident, Butler had completed repossession and no longer bore the burden of maintaining peace. Thus, regardless of whether a breach of the peace occurred at all, Komatsu could not be liable for it because Butler successfully repossessed the excavator when Butler took the excavator off the Ellis property without incident, what happened afterward notwithstanding.
¶ 16. This court will address each of Ellis’s contention in turn. However, we must be aware of our standard of review in this situation. In Mississippi, appellate courts review a trial court’s grant of a motion for summary judgment de novo. Hall v. Cagle, 773 So.2d 928, 929 (¶ 4) (Miss.2000). We will affirm the circuit court’s decision unless we find that a genuine issue of material fact exists. Hancock v. Mid Am. Servs. Inc., 836 So.2d 762, 764 (¶ 7) (Miss.2003).
A. DID ELLIS OFFER A VALID DEFENSE TO KOMATSU’S CLAIM FOR IMMEDIATE POSSESSION OF THE EXCAVATOR?
¶ 17. Ellis argues that the circuit court erred when it held that Ellis did not offer a valid defense to Komatsu’s claim for immediate possession of the equipment. Ellis maintains that they offered a valid defense — full payment under the contract. Ellis reasons that the debt was paid off because of payments made and the property sold and applied to the debt by order of the bankruptcy court. Ellis also relies heavily on Komatsu’s debt cancellation letter.
¶ 18. When one party establishes a debt and the debtor claims payment nullifies the debt, the burden of proving pay *809 ment falls on the debtor. Swift & Co. v. Kelley, 214 So.2d 460, 461 (Miss.1968). However, where the debtor has introduced some evidence of payment, the burden shifts to the creditor to show nonpayment. Id.
¶ 19. Though Ellis relies on the cancellation letter and general propositions, Ko-matsu presented an accounting that demonstrated that Ellis did owe a balance on the debt. Komatsu also presented evidence that, by way of Zubik’s letter and telephone conversation, Ellis was aware of Komatsu’s position on the cancellation letter — that is, mistake in sending the cancellation letter. Komatsu also pointed out that if Ellis believed that the cancellation letter, sent in January of 2001, was genuine, Ellis’s behavior conflicted with that position because Ellis resumed payments and continued to make payments until September of 2001.
¶ 20. If Ellis believed they did not owe Komatsu anything further on the debt, then the proper way to prove that would be to present some form of evidence reflecting payment of the full amount due. If Ellis believed so adamantly that they did not owe Komatsu anything because of the cancellation letter, why did Ellis disbelieve Komatsu’s follow-up notice of mistake? Why did Ellis continue to make payments under the contract? These questions seem unresolvable.
¶ 21. Suffice to say, Komatsu presented evidence that established the remaining debt and refuted Ellis’s primary evidence of payment — the cancellation letter. If anything, Ellis presented evidence that they disputed the debt rather than evidence that would establish satisfaction of the debt. As such, no issue of material fact existed and this assertion of error is meritless.
B. DID THE CIRCUIT COURT ERR WHEN IT DISMISSED ELLIS’S COUNTERCLAIM?
¶ 22. As stated previously, Ellis filed a counterclaim and alleged damages from Butler’s repossession that ended on the side of 1-55. The circuit court determined that Komatsu could not be liable for the I-55 incident because Butler had completed the repossession of the equipment and Butler was only bound to refrain from breaching the peace during repossession, what happens afterward notwithstanding. On appeal, Ellis argues that a jury should have the opportunity to resolve whether Butler breached the peace and whether Butler had completed repossession.
¶ 23. Upon default, a secured party has the right to take possession of the collateral without judicial process if the secured party can avoid breaching the peace in the process. Miss.Code Ann. § 75-9-609 (Rev.2002); Hester v. Bandy, 627 So.2d 833, 836 (Miss.1993) (emphasis added). Our analysis hinges on the question: was Butler in the process of repossession? This Court is unaware of any bright-line test to determine when the act of repossession is complete. We turn to precedent to aid our analysis.
¶ 24. In Ivy v. GMAC, 612 So.2d 1108 (Miss.1992), a factually similar, yet distinguishable case, the Mississippi Supreme Court found a breach of peace and affirmed a damages award. In Ivy, agents of a creditor repossessed a debtor’s van as the debtor observed the repossession. Before the agents left the debtor’s property, the creditor- — unable to stop the repossession from his location — began to chase the agents on foot and finally in another vehicle. The debtor eventually pulled in front of the agent’s truck and caused the agents to rear-end the debtor. No time passed between the act of repossession and pur *810 suit by the debtor. Ivy v. GMAC, 612 So.2d 1108 (Miss.1992).
¶ 25. In this case, however, Butler repossessed the excavator and moved it off Ellis’s lot without anyone being aware of it. No one witnessed Butler moving the excavator off the landfill site, no one confronted Butler as they removed the excavator, and no one pursued Butler as they left the Ellis’s property with the excavator. Had Ellis’s son-in-law not noticed the excavator, Duane Ellis would not have known where to locate it. Conversely, the debtor in Ivy actually witnessed the removal of his van and began his pursuit before the creditor’s agents left his property. Accordingly, this case is distinguishable from Ivy because the act of repossession was peaceful at the time Butler removed the excavator from the Ellis’s landfill.
¶26. In Jordan v. Citizens & Southern Nat’l Bank, 278 S.C. 449, 298 S.E.2d 213,(1982) the South Carolina Supreme Court interpreted their statute regarding the remedy available to a secured lender when a borrower defaults on a loan. In Jordan, the debtors defaulted on a loan for the purchase of a truck. When the debtors heard the truck start and saw the truck proceed down the street, they thought their truck had been stolen and pursued in another vehicle. The pursuit lasted thirty minutes and covered a distance of several miles and at least two towns. The South Carolina Supreme Court determined that a breach of the peace, as contemplated by their statute, referred to conduct at or near to and/or incident to the time of seizure of the collateral. Id. at 278 S.C. 452, 298 S.E.2d 215 (emphasis added). We find the logic behind that interpretation persuasive, on point, and reconcilable with our own self-help repossession law.
¶ 27. Duane Ellis did not confront Butler until Butler was on an interstate highway-fifty-seven miles away from the Ellis landfill. We are unaware of statutory authority or precedent that states that repossession is incomplete until the repos-sessors successfully move repossessed collateral across the boundary of their own real property and effectively reach “home base.” Such a requirement would defy logic. Because a creditor can only be liable for damages that result from a breach of the peace that occurs during repossession, Komatsu cannot be liable even if a jury found that Butler breached the peace during the 1-55 incident. That being the case, this Court cannot say that the circuit court erred in dismissing Ellis’s claim.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR. KING, C.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Duane Ellis did not show the officers copies of Zubik’s "mistake” letter.