LEE, P.J.,
 

 for the Court.
 

 ¶ 1. This appeal stems from the grant of summary judgment in favor of Helen A. Wells who is the granddaughter of El-dridge Tatum (Eldridge) and executrix of his estate. Waymond Tatum (Waymond) and Harold Tatum (Harold), also grandchildren of the deceased, appeal the grant of summary judgment, pro se, alleging various errors. Finding that neither Way-mond nor Harold have standing, we affirm the grant of summary judgment by the Tunica County Chancery Court.
 

 FACTS
 

 ¶ 2. Eldridge fathered six children during his lifetime, five of whom were still alive when he died on December 12, 1966.
 
 [1]
 
 Eldridge’s will was admitted into probate in Tunica County, Mississippi on October 2, 1967. Proof of publication for notice of creditors was filed November 7, 1967, indicating that notice had been published in the
 
 Tunica Times-Democrat,
 
 a newspaper of general circulation in Tunica County on October 5, 1967; October 12, 1967; and October 19,1967. Robert Tatum (Robert),
 
 *740
 
 Eldridge’s son, was appointed executor. The will devised all of Eldridge’s property to Robert including the acreage located in Tunica County which is at the heart of this dispute.
 

 ¶ 3. Robert died intestate on April 18, 1969, before Elridge’s estate could be closed. All of Robert’s property was distributed to his wife and seven children. After Robert’s death, Eldridge’s estate remained open and on file at the chancery clerk’s office in Tunica County. Robert’s heirs have continually maintained the disputed property and paid all taxes on it. In 2004, Robert’s heirs decided to divide the property. The title company refused to proceed until Eldridge’s estate was closed. This led Wells, Robert’s daughter, to petition the court on April 26, 2006, to appoint her executrix of her grandfather’s estate in order to close the estate. By this time, the rest of Eldridge’s children were also deceased. Several of Eldridge’s grandchildren (the grandchildren) from his other children answered Wells’s petition to be appointed executrix on August 8, 2006, contesting their grandfather’s will as it excluded their parents when Eldridge left all of his property to Robert. In their answer and subsequent amended answer, the grandchildren asserted that Robert had forged the will signed by Eldridge and had concealed the existence of the will from the rest of Eldridge’s children. Furthermore, the grandchildren alleged that Wells had known about the forgery and continued to conceal the existence of the will after Robert’s death. Wells filed a motion for summary judgment.
 

 ¶ 4. The chancellor heard arguments about the validity of the grandchildren’s claim. The chancellor held that the will had been on file with the chancery clerk’s office since October 2, 1967. Then, the chancellor considered the applicability of Mississippi Code Annotated section 91-7-23 (Rev.2004), which governs challenges to the validity of a will admitted to probate without notice. The chancellor found that the statute of limitations for challenging the validity of the will had begun to run on the clerk’s entry of the order admitting the will into probate on October 2, 1967, and had expired on October 2,1969.
 

 ¶ 5. Next, the chancellor considered whether there was a concealed fraud that would have tolled the two-year limitations period. The sole evidence proffered by the grandchildren was an affidavit of heir-ship filed in the chancery clerk’s records. The grandchildren asserted that this affidavit proved that Wells knew of the existence of the will but failed to disclose it or the pending estate to the grandchildren or their parents. The chancellor found this evidence was insufficient to prove that a concealed fraud was perpetrated upon El-dridge’s children. The chancellor thus held that the two-year statute of limitations had not been tolled, granted the motion for summary judgment, and dismissed the claims as a final judgment. The chancellor then entered a judgment approving the final report of the administrator and petition for discharge.
 

 ¶ 6. Harold and Waymond appeal alleging the following errors, which we quote verbatim:
 

 1. Eldridge V. Tatum did not make, publish, declare, and sign the document referenced as his last will and testament.
 

 2. Eldridge V. Tatum had six children, not five, as recorded in the Final Judgment.
 

 3. When Eldridge Y. Tatum moved to Chicago, Illinois in 1959, he lived in the same house Helen Wells, appointed Executrix by Final Order dated August 31, 2007, lived in.
 

 4. The Order Admitting Will to Probate and Record contains statements which Robert A. Tatum knew were false.
 

 
 *741
 
 5. First knowledge that Helen Wells intended to limit heirs to children of Robert A. Tatum was received in October 2004.
 

 6. Testimony of Attorney Robert Cornelius as recorded in the Final Judgment differs from information he gave his clients and does not include information given to him to prove the case.
 

 7. All parties, except for attorneys, were excluded from the courtroom and unable to hear any of the proceedings.
 

 8. A title search for properties owned by Eldridge V. Tatum at the time of his death shows a beneficiary designated with a trustee appointed.
 

 It appears from Waymond’s and Harold’s arguments that they are essentially challenging the grant of summary judgment by the chancellor. Therefore, we review the record to determine if the grant of summary judgment was proper in this case.
 

 ANALYSIS
 

 STANDARD OF REVIEW
 

 ¶ 7. This Court reviews the trial court’s grant or denial of summary judgment de novo by examining all evidentiary matters before it.
 
 Heigle v. Heigle,
 
 771 So.2d 341, 345(¶ 8) (Miss.2000). In reviewing the grant or denial of summary judgment:
 

 The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt.
 

 Id.
 
 However, before we may determine whether the chancery court’s grant of summary judgment was proper, we must determine if Waymond and Harold properly perfected their appeal and had standing to challenge the will.
 

 I. WHETHER THE APPEAL WAS PROPERLY PERFECTED.
 

 ¶ 8. The final judgment was signed on August 31, 2007, and entered on September 4, 2007. On September 25, 2007, Harold filed a document titled “Respondent’s Notice of Appeal to a Court of Appeals from an Order of a District Court” in the chancery court. The document was signed by Harold on behalf of himself and Waymond. It announced that each grandchild was appealing to the United States Court of Appeals for the Fifth Circuit from the final judgment of the chancellor dated August 31, 2007. A non-party named Ronique Tatum signed the proof of service by mail.
 

 ¶ 9. The Tunica County Chancery Court’s court administrator sent Harold a letter explaining that the proper procedure was to appeal to the Mississippi Supreme Court. The letter also explained that Harold could not file a pro se appeal on behalf of all the grandchildren as this would be the unlicensed practice of law; he could only appeal on his behalf.
 
 [2]
 
 On October 11, 2007, the chancery clerk received a letter
 
 *742
 
 from Harold referencing his documents dated September 25, 2007, and requesting that his appeal be filed with the supreme court. His appeal was filed in the clerk’s office for the supreme court on November 20, 2007.
 

 ¶ 10. A notice of appeal must be filed within thirty days from the date of the entry of judgment or order appealed from. M.R.A.P. 4(a). “This is a ‘hard-edged, mandatory’ rule which [the appellate court] ‘strictly enforces.’ ”
 
 Ivy v. Gen. Motors Acceptance Corp.,
 
 612 So.2d 1108, 1116 (Miss.1992) (quoting
 
 Tandy Electronics, Inc. v. Fletcher,
 
 554 So.2d 308, 309-12 (Miss.1989)). However, this Court will not dismiss an appeal “for informality of form or title of the notice of appeal.” M.R.A.P. 3(c). The notice must “specify the party or parties taking the appeal and the party or parties against whom the appeal is taken, and shall designate as a whole or in part the judgment or order appealed from.”
 
 Id.
 
 In
 
 Ivy,
 
 the supreme court stated that a letter written to the circuit clerk and the court reporter within thirty days of the entry of judgment which indicated that Ivy “desired to appeal [this] cause” would suffice as his perfected notice of appeal.
 
 Ivy,
 
 612 So.2d at 1116. In the same vein, we find that Harold’s and Way-mond’s notice of appeal sufficed to perfect their appeal.
 

 II. WHETHER THE GRANDCHILDREN HAVE STANDING TO CHALLENGE THEIR GRANDFATHER’S WILL.
 

 ¶ 11. Wells contends that the grandchildren did not have standing as “interested parties” under Mississippi Code Annotated section 91-7-23 to challenge the will of Eldridge. Section 91-7-23 states that:
 

 Any person interested may, at any time within two years, by petition or bill, contest the validity of the will probated without notice; and an issue shall be made up and tried as other issues to determine whether the writing produced be the will of the testator or not. If some person does not appear within two years to contest the will, the probate shall be final and forever binding, saving to infants and persons of unsound mind the period of two years to contest the will after the removal of their respective disabilities. In case of concealed fraud, the limitation shall commence to run at, and not before, the time when such fraud shall be, or with reasonable diligence might have been, first known or discovered.
 

 Wells asserts the issue of standing for the first time on appeal. However, this does not bar the issue because “ ‘[standing’ is a jurisdictional issue which may be raised by any party or the Court at any time.”
 
 City of Madison v. Bryan,
 
 763 So.2d 162, 166(¶ 20) (Miss.2000) (citing
 
 Williams v. Stevens,
 
 390 So.2d 1012, 1014 (Miss.1980)).
 

 ¶ 12. Only interested parties have standing to contest a will. Miss.Code Ann. § 91-7-23;
 
 see also Cajoleas v. Attaya,
 
 145 Miss. 436, 446, 111 So. 359, 361 (1927). The supreme court has defined interested parties as “parties who have a pecuniary interest in the subject of the contest, and under all of the authorities the heirs at law who would take the property of the deceased in the absence of a valid will.”
 
 Hoskins v. Holmes County Cmty. Hosp.,
 
 135 Miss. 89, 101, 99 So. 570, 573 (1924). It is clear that all of Eldridge’s children would have been interested parties to their father’s will as they were his heirs at law who would have taken property from their father through intestate succession if the will had been deemed invalid. They were free to contest the validity of the will within the two-year statute of limitations. Whether the grandchildren have standing
 
 *743
 
 to challenge the will depends on whether they had, at the time the will was entered into probate, a direct pecuniary interest in the estate which would have been detrimentally affected if the will was determined to be invalid.
 
 Cajoleas,
 
 145 Miss. at 447, 111 So. at 361.
 

 ¶ 13. While it is true that Mississippi recognizes the right to representation, this concept is inapplicable in the current situation. The right of representation is the rule of descent and distribution whereby if a person’s parent could have inherited through intestate succession from the decedent’s estate, if the parent had been alive at the time of the decedent’s death, the parent’s share will pass to the parent’s children who are in being at the time of the decedent’s death. Miss.Code Ann. § 91-1-3 (Rev.2004). However, because all of Eldridge’s children were alive at the time of Eldridge’s death, the right of representation does not apply. Also, even if all of Eldridge’s children had shared equally in his estate, there is no guarantee that any of his grandchildren would have received a portion of his estate upon their own parents’ deaths. Parents do not have to leave any portion of their estate to their children.
 
 [3]
 
 Miss.Code Ann. § 91-5-3 (Rev. 2004);
 
 see also Guion v. Guion,
 
 232 Miss. 647, 660, 100 So.2d 351, 357 (1958). Each of Eldridge’s children could have elected to sell the land during his or her lifetime or leave it to someone else besides his or her children in his or her will.
 

 ¶ 14. Therefore, the grandchildren were not interested parties at the time of the will’s entry into probate. They had no direct, pecuniary interest in his estate at the time it was entered into probate or within the two-year statute of limitations. They could not have inherited through intestate succession, and there was no guarantee they would inherit the property from their parents upon their parents’ deaths. The only people who could have rightfully contested the will would have been Eldridge’s children, who are all now deceased, or the legal representatives of their estates. Had the grandchildren brought suit, not in their individual capacities but as the legal representative of their deceased parents’ estates, they would have had standing; however, they did not. Accordingly, they have no standing.
 

 ¶ 15. Because the grandchildren lack standing to contest their grandfather’s will, all other assertions of error are moot.
 

 ¶ 16. For the above reasons, we affirm the chancery court’s grant of summary judgment in favor of Wells.
 

 ¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., MYERS, P.J., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . The child that predeceased Eldridge died at approximately age thirteen and had no children of his own.
 

 [2]
 

 . Because of the pro se nature of the appeal, the remainder of this analysis will solely deal with Waymond’s and Harold’s interest in the disputed property although all of Eldridge's other grandchildren are similarly situated. All references to the grandchildren from hereon will be restricted to Waymond and Harold.
 

 [3]
 

 . There are circumstances under which the law does provide some protection for a child bom after his parent’s death.
 
 See generally,
 
 Robert A. Weems, Wills and Administration of Estates in Mississippi § 6:13 (3rd ed.2003).